20 U.S. 453
 5 L.Ed. 496
 7 Wheat. 453
 EVANS
v.
HETTICH.
 March 20, 1822
 
 ERROR to the Circuit Court of Pennsylvania.
 This was an action for the infringement of the same patent as in the preceding case of Evans v. Eaton, and was argued by the same counsel. The points involved will be found to be fully discussed in the argument of that case, to which the learned reader is referred. The following is the charge delivered to the jury in the Court below, which it is thought necessary here to insert.
 After stating the evidence on both sides, Mr. Justice WASHINGTON proceeded as follows:
 
 
 1
 The facts intended to be proved by the evidence given in this cause, may be arranged under the following heads.
 
 
 2
 (1.) Such as respect the value of the plaintiff's Hopperboy. (2.) The time of its discovery. (3.) The kind of machine used by the defendant. (4.) The time of its discovery and use.
 
 
 3
 1st. As to the first, the Court has no observations to make, except that if you should find a verdict for the plaintiff, you will give the actual damages which the plaintiff has sustained, by reason of the defendant's use of his invention, which the Court will treble.
 
 
 4
 2d. The evidence applicable to this head, if believed by the jury, proves, that in 1783, Oliver Evans commenced his investigation of the subject of an improvement in the manufactory of flour; and in the summer of the same year, he declared that he had accomplished it. In 1784, he made a model of his Hopperboy, which had no cords, weight, or pulley; and consequently the lower arm was, for the sake of the experiment, turned by the hand. In 1785 it was in operation in a mill, in as perfect a state as it now is.
 
 
 5
 3d. If the witness who was called to prove the kind of machine used by the defendant is believed by the jury, it consists of an upright square shaft, with a cog that turns it, and which is moved by the water power of the mill. This shaft is inserted into a square mortice, in an arm or board somewhat resembling an S, with strips of wood fixed on its under side, and so arranged as to turn the meal below it, cool, dry, and conduct it to the bolting chest. This arm slips, with ease, up and down the shaft, and must be raised by hand, and kept suspended until the meal is put under it. It has no upper arm, pulley, weight, or leading lines; and the strips below the arm are like the rake, as it is called, in the plaintiff's Hopperboy. This machine has acquired the name of the S. or the Stouffer Hopperboy.
 
 
 6
 4th. The witnesses examined to prove the originality, and use of the defendant's Hopperboy, if believed by the jury, date it as early as about the year 1765; and its erection and actual use in mills, in 1775 and 1778; and progressively to later periods. Objections have been made, on both sides, to the credit of some of the witnesses who have been examined, not on the ground of want of veracity, or of character, but of interest, short of that which can affect their competency. These objections have been pressed so far beyond their just limits, as to require from the Court an explanation of their real value. Where the evidence of witnesses opposed by other witnesses is relied upon, by either side, to prove a particular fact, the jury must necessarily weigh their credit, in order to satisfy their own minds on which side the truth is most likely to be; and in making this inquiry, every circumstance which can affect the veracity of the witnesses, whether it concern their moral character, or whether it arise from some interest which they may have in the question, or from feelings favourable to one or the other of the parties, should be taken into the calculation. But if the fact in controversy may exist, without a violation of probability, and the proof is by witnesses exclusively on that side, there is nothing to put into the opposite scale, against which to weigh the credit of those witnesses; and if the objection to their credit be worth any thing, it must be to the full extent of rejecting their testimony altogether, or else it is worth nothing. The jury cannot compromise the matter, or halt between two opinions;—they must decide that the fact is so, or is not so; and if the latter be cause of objection to the credit of the witnesses, it would amount to the confounding of the questions of competency, and credibility; for the effect would be the same, whether the Court refused to permit the witnesses to testify on the ground of incompetency, or the jury should reject their testimony, when given, on that of want of credibility. I have thought it proper to submit these general observations to the consideration of the jury.
 
 
 7
 We come now to the question of law, which arises out of these facts, which is,
 
 
 8
 What are the things in which the plaintiff alleges, and has proved, he has an exclusive property, which he asserts the defendant has used, and which the defendant denies?
 
 
 9
 The first claim is for an improved Hopperboy, which the plaintiff insists is granted by his patent, which has received the sanction of the Supreme Court; and which the defendant acknowledges. This being, then, conceded ground, the Court will proceed to examine it; and the inquiry will be, whether the plaintiff is entitled to a verdict for an mfringement of his patent for his improved Hopperboy. The objection relied upon by the defendant is, that the plaintiff has not set forth in his specification what are the improvements of which he claims to be the inventor, so that a person skilled in the art might comprehend distinctly in what they consist. This objection in point of fact is fully supported. Neither the specification, nor any other document connected with the patent, states, or even alludes to any specific improvement in the Hopperboy. Taking this as true, how stands the law? The 3d section of the patent law declares, that 'before an inventor can receive a patent, he shall deliver a written description of his invention, in such full, clear, and exact terms, as to distinguish the same from all other things before known, and to enable a person skilled in the art, &c. of which it is a branch, &c. to make and use the same.'
 
 
 10
 What, then, is the plaintiff's invention, as asserted by his counsel, conceded by the defendant, and sanctioned by the Supreme Court in the case of Evans v. Eaton? The answer is, an improvement of the Hopperboy, or an improved Hopperboy, which that Court has declared to be substantially the same. If this be so, then the above section of the law has declared, that he must specify this improvement in full, clear, and exact terms. If he has not done so, he has no valid patent on which he can recover.
 
 
 11
 The English decisions correspond with the injunctions of our law.—Boulter v. Bull, Boville v. Moor, M'Farlane v. Price, Harmen v. Playne. See 3 Wheat. Rep. Appx. 21. The American decisions, so far as we have any reports of them, maintain the same doctrine. Mr. Justice STORY, in the case of Lovel v. Lewis, lays it down, 'that if the patent be for an improvement in an existing machine, the patentee must, in his specification, distinguish the new from the old, and confine his patent to such parts only as are new, for if both are mixed together, and a patent taken for the whole, it is void.' What is the reason for all this?
 
 
 12
 In the first place, it is to enable the public to enjoy the full benefit of the discovery, when the patentee's monopoly is expired; by having it so described on record, that any person skilled in the art, of which the invention is a branch, may be able to construct it. The next reason is, to put every citizen upon his guard, that he may not, through ignorance, violate the law, by infringing the rights of the patentee, and subjecting himself to the consequences of litigation. The inventor of the original machine, if he has obtained a patent for it, and all persons claiming under him, may lawfully enjoy all the benefits of that discovery, notwithstanding the improvement made upon it by a subsequent discoverer. If he has not chosen to ask for a monopoly, but abandoned it to the public, then it becomes public property, and any person has a right to use it. The inventor of an improvement may also obtain a patent for his discovery, which cannot legally be invaded by the inventor of the original machine, or by any other person. These rights of each are secured by law, and there is no incompatibility between them. But if a man wishing to use the original discovery, and honestly disposed to avoid an infraction of the improver's right, is unable to discover, from any certain and known standard, when the original invention ends, and the improvement commences, how is it possible for him to exercise his own acknowledged right, freed from the danger of invading that of another? And to what acts of oppression might not this lead? Might not the patentee of this mysterious improvement obtain from the ignorant, the timid, and even the prudent members of society, who wish to use only the original discovery, the price he chooses to ask for a license to use his improvement, and in this way compel them to purchase it, rather than incur expenses and inconveniences far greater than the sum demanded? If this may happen, then the improver enjoysin a degree, the benefit of a discoverer, both of the original machine, and also of the improvement. In short, the patentee of the improvement may, to a certain extent, keep men at arm's length as to the use of the original invention, or make them pay him for it, in derogation of the rights of the inventor of the original machine. If the law, as applicable to cases in general, be rightly laid down, the next inquiry is, is the present an excepted case? The plaintiff's counsel have not directly asserted it to be so; but they have referred, with some emphasis, to what is said by the Supreme Court, in the case of Evans v. Eaton. 3 Wheat. Rep. 518. The expressions are, 'In all cases where the plaintiff's claim is for an improvement on a machine, it will be incumbent on him to show the extent of his improvement, so that a person understanding the subject, may comprehend distinctly in what it consists.'
 
 
 13
 This decision does not state, in what way the extent of the plaintiff's improvement is to be proved; nor did the case require that the Supreme Court should be more explicit. The obvious conclusion is, that the Court left that matter undecided, and meant that the extent of the plaintiff's improvement should be shown according to rules of law. A contrary construction would be most unfair and unwarranted.
 
 
 14
 Is it possible to believe, that if the Supreme Court intended to decide contrary to the provisions of the 3d section of the Patent Law, and of the English and American decisions, that this was a case without the influence of that law, and those decisions, that such intention would have been expressed in such general terms? This cannot be admitted: neither can the private act for the relief of Oliver Evans warrant the argument, that this case is freed from the restrictions contained in the 3d section of the patent law; because, except as to the extent of the grant, it refers to, and the Supreme Court in the before mentioned case, considers it as within, the provisions of that law.
 
 
 15
 Is it likely that the Supreme Court could have meant, that the plaintiff might cure the defects of his specification, by proving to the jury in what his improvement consisted? If so, then, as to the present defendant, such an explanation would be unavailing to save him from the consequences of an error, against which the sagacity of man, could not have guarded him. He has sinned already, if he has invaded the plaintiff's right, and it is too late to convince him of his error, if he must be a victim of it, for the want of that light, which is now shed upon the act long after his supposed transgression. But of what avail would that explanation be, after the expiration of the plaintiff's monopoly? The parol evidence given in a Court of justice being seldom recollected with accuracy, it affords the most unsafe notice of facts, particularly when they respect matters of art, that can well be supposed. What man, who wishes not to invade the plaintiff's patent, would venture to erect a Hopperboy, merely upon the information which he could gather from this trial? He could obtain none upon which he could safely rely; nor could any artist, after the expiration of the plaintiff's right, be enabled from such a source, to know how to construct the improved Hopperboy. But even if the extent of the improvement could be proved in this way, the plaintiff has not attempted to prove it, and what is more, his counsel, though repeatedly called upon to point it out, have not been able to do it.
 
 
 16
 Can the jury, without evidence, and without the aid of the plaintiff, or his counsel, say in what those improvements consist? If they had never seen another Hopperboy, supposed to be the original, this would be impossible. If, having seen the Stouffer Hopperboy, they can do so by comparing with it the plaintiff's improved Hopperboy, then the consequence seems almost to be inevitable, that the Stouffer Hopperboy is the original one; the point which under the next head is denied by the plaintiff. But if the specification had stated in what the plaintiff's improvement consisted, still he is not entitled to a verdict for a violation of his patent, unless he has proved, to your satisfaction, that the defendant has infringed it.
 
 
 17
 Upon the whole, then, this patent, so far as it is for an improvement, cannot be supported; and as to any claim founded on this right, the plaintiff is not entitled to your verdict.
 
 
 18
 2. The plaintiff contends that he is the original inventor, not only of the improved Hopperboy, but of the whole machine; that his patent grants him the exclusive right for both; and that this claim has received the sanction of the Supreme Court, Whether, in point of fact, he is the original inventor of the Hopperboy, will be attended to hereafter. Neither shall I stop to inquire, whether the plaintiff's patent grants him the right, because if the Supreme Court has sanctioned the claim, that is law to this Court. The part of the decision of that Court, relied upon by the plaintiff's counsel, is found in 3 Wheat. Rep. 517. where the Chief Justice says, 'The opinion of the Court, then, is, that Oliver Evans may claim under his patent the exclusive use of his inventions and improvements in the art of manufacturing flour and meal, and in the several machines which he has invented, and in his improvements on machines previously discovered.'
 
 
 19
 It would seem almost impossible to misunderstand this positive declaration of the Court. It appears to be the result of the previous reasoning. It states that the plaintiff may claim, (1.) The exclusive use of his improvements, and inventions, in the art of manufacturing flour. (2.) In the several machines which he has invented. (3.) In his improvements on machines previously discovered. As to the 1st, there is no dispute in the cause. The 3d has been already disposed of, and the 2d will now be examined. It is contended by the defendant's counsel, that this is not the correct construction of the above sentence of the Court, because it is inconsistent with the pretensions of the plaintiff's counsel, and with the argument of the Chief Justice, throughout the opinion, which led to the above conclusion. This supposed inconsistency may, in the opinion of this Court, be explained by the following observations:
 
 
 20
 The exceptions taken to the charge of this Court, in the case of Evans v. Eaton, were, 1st. that Oliver Evans' patent was only for the combined effect of all the machines mentioned in his patent, and, 2d. in directing the jury to find for the defendant, if they should be of opinion that the Hopperboy was in use prior to the improvement alleged to be made by Oliver Evans. These were the only questions presented to the view of the Supreme Court, upon which it was deemed proper by that Court to give an opinion. The reasoning of the Chief Justice, therefore, is intended to prove, and correct these errors in the charge, by showing that Oliver Evans was entitled, by his patent, and the accompanying documents, not only to the general combination of the different machines, but to an improvement on the Hopperboy, one of the machines used in combination. If he had a right to an improvement on the Hopperboy, then this Court was clearly wrong in directing the jury to find a verdict for the defendant, if they should be of opinion that the Hopperboy was in use prior to the plaintiff's improvement; because it was unimportant who was the original discoverer of the Hopperboy, provided the plaintiff had a patent for an improved Hopperboy, and the defendant used that improvement, and the charge precluded that inquiry. But whilst the Chief Justice aims to prove that Oliver Evans was entitled to this double claim, he does not exclude any other claim. There is an expression relied upon by the defendant's counsel, as having this appearance; but it is more likely that the word relied on is a typographical error, than that the Court should both deny and affirm the plaintiff's right, as an original inventor of the Hopperboy. When the Court came to state, definitively, what were the plaintiff's claims under this patent, the whole are distinctly stated. The act for the relief of Oliver Evans authorizes a grant to him of his improvement, in the art of manufacturing flour, and in the several machines which he has invented, and in his improvements, &c. The Court says, that 'the application is for a patent coextensive with the act,' &c. 3 Wheat. Rep. 508.
 
 
 21
 If, then, in this enumeration of the plaintiff's rights under the patent, those to the machines had been omitted, it might have been supposed that it was not recognized by that Court, and it is consequently introduced, in order to prevent a conclusion against its validity, although it had not been brought into view in the previous argument; because a matter not in dispute. This course of reasoning is, we think, strongly fortified, by what the Court says, p. 518. 'In all cases where his claim is for an improvement,' &c. Now, if his claim was confined to an improvement, produced by the combined operation of all the machines, and if an improvement in the separate machines, why should the Court have stated, hypothetically, that which was to be proved in case the plaintiff claims for an improvement? The sentence following immediately that which has been relied on by the defendant's counsel seems to explain it, and to fortify the construction, which we have given to it. Upon the whole, we are of opinion, that the question, who is the original inventor of the Hopperboy? is left open by the Supreme Court, and is now to be decided by the jury. If, then, the jury should be of opinion upon the evidence, that the Hopperboy which the defendant uses, was invented, and was in use, prior to the discovery of Oliver Evans, then your verdict ought to be for the defendant. But to this construction there are objections made, which it is proper to notice.
 
 
 22
 1. It is contended, that the judgment of the Supreme Court in Evans v. Eaton, 3 Wheat. Rep. 519 where it is said that there is error in the proceedings below, in this, that in the charge the opinion is expressed, 'that Oliver Evans was not entitled to recover if the Hopperboy in his declaration mentioned had been in use previous to his alleged discovery,' entitles the plaintiff to a verdict, although the jury should be of opinion that he is not the original inventor of the Hopperboy. That the Court did not mean this is most obvious, from what is said in page 517, that Oliver Evans may claim the exclusive use in the several machines which he has invented. Could the Supreme Court intend to say, immediately after, that he is entitled to a verdict for a machine which he has not invented? Can it be supposed that the Court meant to ride over the 3d section of the patent law, and set up a different rule, to govern this case, without having stated the reasons for so extraordinary a distinction? This is altogether inadmissible. It is also worthy of remark, that the words 'in his declaration mentioned' in the judgment of the Supreme Court, are not in the charge of the Circuit Court, as stated by the Chief Justice; and it is the insertion of those words in the judgment which produces all the difficulty. Leave them out, and then the judgment is consistent with the whole reasoning of the Chief Justice, which condemned the charge of the Circuit Court, because it precluded Oliver Evans from obtaining a verdict for his improvement, if he was not the original inventor of the elementary parts of this machine. Retain them, and it follows, that if Oliver Evans was proved not to be the inventor of the Hopperboy in his declaration mentioned, still the defendant was not entitled to a verdict. This would be in such direct opposition to the 6th section of the patent law, that we cannot suppose this was the meaning of the Supreme Court.
 
 
 23
 2. The next objection to the construction is, that the act of the Legislature of Pennsylvania, of 1787, conveyed to Oliver Evans the original Hopperboy, and consequently the existence and use of the Stouffer Hopperboy, at a period prior to the plaintiff's discovery, cannot now be urged to invalidate his patent. It is by no means to be admitted that the act operates to make such a transfer. But if it did, still the plaintiff cannot recover, if he appears not to be the first or original discoverer of the Hopperboy. His claim is not derivative either from the State or from an individual. His suit is founded on his patent, and unless he was himself the original inventor of the Hopperboy, he cannot recover.
 
 
 24
 3. Another objection stated by the plaintiff's counsel is, that the Stouffer Hopperboy, although the jury should believe it was in use in many mills before the plaintiff's discovery had fallen into disuse, and therefore cannot be urged to invalidate the plaintiff's right of recovery. The answer to this is, that whether it fell into disuse or not, if it was used before the plaintiff's discovery, the plaintiff could not obtain a patent for it, so as to exclude the defendant from using it, if he chose to do so.
 
 
 25
 4. The last objection is, that the use of the Stouffer machine cannot affect the plaintiff's patent, unless it was public. Whether that Hopperboy was in public use or not, the jury will judge from the evidence. It was erected and used in four or five mills, if the defendant's witnesses are believed. But this argument has no foundation in the act of Congress, which does not speak of public use. It is immaterial whether the patentee had notice of the prior invention or not. If it was in actual use in any part of the world, however unlikely or impossible that the fact could come to the knowledge of the patentee, his patent for the same machine cannot be supported.
 
 
 26
 A verdict was rendered for the defendant, and exceptions being taken to the above charge, the cause was brought by writ of error before this Court.
 
 March 20th.
 
 27
 Mr. Justice STORY delivered the opinion of the Court.
 
 
 28
 This case is an action for an infringement of the same patent as in Evans v. Eaton Ante, p. 356 and many of the remarks in that case are applicable to this; and therefore the opinion now delivered will refer to such points only, as are not completely disposed of by the opinion already delivered. The evidence in this case does not establish, that the defendant used the plaintiff's improved Hopperboy; but the Hopperboy used by the defendant, is asserted to be Stouffer's Hopperboy. At the new trial, a Mr. Aby was offered as a witness by the defendant, to prove the nature and character of the Hopperboy used by the defendant; the plaintiff objected to his testimony, as incompetent, because he was sued by the plaintiff for an infringement of his patent right, under circumstances similar to those alleged in proof against the defendant. The Court overruled the objection; and the witness was then sworn on the voir dire, as to his interest in the suit; but upon a full examination, it did not appear that he was really interested; and the Court therefore permitted him to be sworn in chief. The plaintiff took an exception to this decision of the Court. The objection to the competency of Aby, so far as he has an interest from being sued, cannot be distinguished, in principle, from that already overruled in the case of Evans v. Eaton. There is this additional circumstance in this case, that Aby was not called as a geneal witness, but to establish a single fact, viz. the nature and character of the Hopperboy used by the defendant. The other objection upon his answers on the voir dire, is disposed of by the single remark that the purged himself of any real interest in the event of the suit. A question was asked of this witness, on his examination in chief, whether the Hopperboy in the defendant's mill was like the model exhibited in Court of the plaintiff's patented Hopperboy; the plaintiff objected to the question, because such testimony could not be given in this case, for want of notice thereof. But the objection was overruled by the Court; and, in our judgment, with perfect correctness. No notice was necessary to authorize the inquirv; and if the plaintiff meant to rely on the notice required by the sixth section of the patent act, in certain cases, it is only necessary to say, that this was not within the provision of that class of cases. The question was perfectly proper under the general issue. Similar objections were taken to other witnesses; but it is unnecessary to remark on them.
 
 
 29
 An inquiry was proposed by the plaintiff, to one of the witnesses, whether one Peter Stouffer had paid the plaintiff for a license for his mill; but the Court refused to allow the question to be asked; and we see no reason why it should have been allowed, for it merely referred to an act among strangers, which ought not to prejudice the defendant. A similar question was proposed to be asked of the same witness, whether the executors of Jacob Stouffer had paid the plaintiff for a license for the mill of Jacob; the Court overruled the question; and for the same reason, it was rightly overruled.
 
 
 30
 The deposition of one John Shetter was read in evidence by the defendant, without opposition, and afterwards the plaintiff moved to have the same rejected, because not taken according to the rules of the Court; but the Court refused to reject its and in our judgment rightly, because it having been once introduced with the acquiescence and consent of the plaintiff, he could not afterwards avail himself of the objection.
 
 
 31
 The plaintiff then proposed to ask a question of a witness, whether Daniel Stouffer was subject to fits of derangement, and whether the witness had said so; but the Court overruled the question. It does not appear distinctly in the record, that Daniel Stouffer was a witness in the cause; but if he was so, the question was properly overruled, because a person being subject to fits of derangement, is no objection either to his competency or credibility, if he is sane at the time of giving his testimony.
 
 
 32
 The next objection of the plaintiff's counsel, is to the charge of the Court, in summing up the cause to the jury; but the points on which that charge materially depends, have been so fully discussed in the opinion just delivered in Evans v. Eaton, that it is unnecessary to examine them at large.
 
 
 33
 Upon the whole, it is the opinion of the majority of the Court, that the judgment ought to be affirmed with costs.