## HENRY WHITE vs. THE STATE.

1. CRIMINAL TRIAL IN CAPITAL CASES: *Juror. Competency. Opinion of guilt or innocence.*

Where a juror had an impression of the prisoner's guilt, not from having heard the testimony, but altogether from other sources, and says it would not interfere with the free exercise of his judgment, and would not require testimony to remove it, he is a competent juror.

2. SAME: SAME: *Examination of juror on* voire dire. *Scruples against capital punishment.*

It is the duty of the court to see that an impartial jury is impaneled, composed of men above all exception, and it is a proper question for the court to ask each juror if he is opposed to capital punishment.

3. SAME: SAME: *Witness. Examination as to competency.*

A prisoner has the right to test the competency of the witness against him, either as to their religious belief, whether the witness recognizes the obligation of an oath, or as to intellectual capacity; and it is no answer to the motion that on another occasion, and in a different legal proceeding, the judge made such examination, when the prisoner was a stranger to that inquiry, and without opportunity to offer testimony or suggest questions.

4. SAME: SAME: *Right of prisoner's counsel to confer with his witnesses. Case in judgment.*

Accused was jointly indicted with G. The severed G. was tried and convicted, and, before sentence, was summoned by the accused as a witness, and brought into court. The court refused to permit counsel for the accused to confer or have any conversation with the witness G. *Held,* that this was error, as a part of the jury trial guaranteed by the constitution is the right to process for witnesses, and the use of the usual and ordinary means to prepare for the trial. It is usual, and often important, that counsel should confer with the witnesses that he proposes to call.

5. SAME: SAME: *Witness. Competency. Case in judgment.*

A witness cannot be required to deliver inculpatory evidence. Where a witness proposes to testify against the defendant in a criminal trial, the defendant cannot object upon the ground that the evidence would criminate the witness. In such case it is a privilege personal to the witness to testify or not, and the accused cannot interpose the objection.

6. SAME: SAME: *Instructions to the jury. Duty of the court.*

The judge has the right to modify instructions so as to make them conform to the law, and he is not under any duty to repeat instructions already given, which fully and completely cover the ground embraced in the one asked.

7. SAME: SAME: *Testimony of an accomplice. Corroboration.*

The testimony of an accomplice should be weighed with great caution, jealousy, and distrust, but it is impossible to say, as a question of law, that he shall not be believed. The jury are to judge how far his testimony has been corroborated, or they may believe him, if they choose, without corroboration.

ERROR to the Circuit Court of *Colfax* County.

Hon. J. A. ORR, Judge.

At the March term, 1876, of the circuit court of Colfax county, plaintiff in error was indicted jointly with one Margaret Givens, charged with the murder of Belle Givens, the infant child of Margaret Givens. He was tried at the same term of the court, convicted, and sentenced to the penitentiary for life. On the trial, at the instance of the state, the court, among other instructions, gave the following:

"12. It is for the jury to determine, if they find the defendant guilty of murder, whether it shall be a general verdict of guilty, as charged in the bill of indictment, in which the death penalty will be pronounced, or for the jury to find the defendant guilty, and adjudge the penalty imprisonment for life in the state penitentiary."

The court refused to give the following instructions, asked by the defendant, to wit:

" 5. If the jury have a well-founded doubt as to the guilt of the defendant, they will find a verdict of not guilty."

" Unless there has been the testimony of at least one credible witness introduced before the jury, that has established beyond all reasonable doubt that the defendant is guilty as charged in the indictment, the jury will find for the defendant ; as no citizen should be convicted of the crime of murder, upon the testimony of witnesses, without there has been the testimony of at least one credible witness introduced before the jury.

" 8. Where a witness has testified falsely as to one material fact in the trial of the cause, courts and juries are bound, upon principles of law and morality and justice, to apply the maxim '*falsus in uno, falsus in omnibus*'—that is, false in one thing, false in all."

The indictment being joint a severance was had, and the co-defendant, Margaret Givens, who had been tried and convicted but not yet sentenced, was summoned as a witness for White, the accused, and brought into court, and the circuit judge refused to allow counsel for the prisoner to have any conversation with the witness. To which defendant excepted.

When Matilda Givens was offered as a witness defendant's counsel proposed to examine her touching her competency, intellectually, as a witness, which was refused upon the ground that the court had, on a former trial in another case, examined the witness and pronounced her competent to testify. To this defendant excepted.

After conviction a motion was made for a new trial, refused by the court, and this came to this court on writ of error.

Defendant assigns for error, in substance, the following :

1. That the court erred in refusing to permit counsel for accused to have any conversation with the witness and co-defendant, Margaret Givens.

2. In interrogating the jurors before challenge, and especially for asking each juror if he was opposed to capital punishment.

3. In overruling challenge, for cause, of William Henry, as not an impartial juror.

4. In overruling challenge of juror James Brinker, as incompetent, because he could neither read nor write.

5. In overruling motion to examine the witness, Matilda Givens, touching her competency to testify.

6. In permitting the witness, Matilda Givens, to testify as to the conduct of the co-defendant, Margaret Givens, towards. her mother.

7. In permitting Margaret Givens to testify in the cause.

8. In modifying defendant's charges, Nos. 1, 4, and 6.

9. In refusing defendant's charges, Nos. 3, 5, 7, and 8.

10. In giving the state's charges, Nos. 5, 6, 7, 8, 9, 10, 11, and 12.

11. In overruling motion for a new trial.

*Fred. Beall*, for plaintiff in error.:

The action of the court in refusing counsel the right to confer with his witness is without a parallel.

The court had no authority to interrogate the jurors before challenge, and, in the next place, the questions asked were improper.   1 Ch. Crim. L., 546 ; King *v.* The State, 5 How., 730.

That William Henry was not a competent juror.   See Sam's case, 13 S. & M., 189 ; Helm's case, ib., 500 ; Williams' case,. 32 Miss., 389 ; Noe's case, 4 How., 330.

James Brinker was incompetent as a juror.   He could neither read nor write, and the Code of 1871, § 643, requires. all instructions to be in writing.   Construe this with § 724.

It was error to refuse to examine Matilda Givens as to her competency as a witness.   See Ph. Ev., 19.

It was error to permit the witness, Matilda Givens, mother of Margaret, to state the conduct of Margaret toward her after her intimacy with the accused.   This question was incompetent, and could only prejudice the jury.

Margaret Givens was incompetent as a witness, because of inducements offered her to testify.

The action of the court in modifying defendant's instructions is not sustained by the Code, § 643.

Defendant's 3d charge should have been given. 1 Ph. Ev., 108–114; Rey v. The State, 1 Iowa, 316.

Defendant's 5th charge should have been given. It is the law. It was short and comprehensive.

The 8th should have been given. See Nevell v. Wright, 8 Conn., 323; 6 Monroe, 136; 2 Wheat., 457.

A new trial should have been granted. The verdict is not warranted by the testimony in the case, and the ruling of the court on the points of law was unsupported by authority, as already shown.

*G. E. Harris*, Attorney General, for the State:

As to the interview of the counsel with the co-defendant, Margaret Given, it is only necessary to say that she had been convicted of a capital offense, and was in custody of the sheriff awaiting her sentence.

The court had the right to interrogate the jurors, of its own motion (see Carpenter's case, 4 How., 163), and especially in a capital case, if they are opposed to capital punishment. See Williams' case, 32 Miss., 389; Lewis' case, 9 S. & M., 115; Damon's case, 13 Wend., 351; Lesher's case, 17 Serg. & Rawle, 155; Jones' case, 2 Blackf., 475; Martin's case, 16 Ohio, 364; Williams' case, 3 Kelly, 459.

The juror Brinker was competent. The Code does not require that he should read and write; the qualifications are fixed by the Code of 1871, § 724, and nothing more can be required.

As to the right of defendant to examine, as to competency, the witness Matilda Given, the court had gone through that examination on the previous day and had pronounced her competent.

The court has the power to modify the instructions so as to conform them to the law, in his judgment. Code, 1871, § 643; 9 S. & M., 284; 13 ib., 202; 4 ib., 118.

As to the 3d instruction for the defendant, it is not the law

(see Fitzcox's case, MSS. opinion), and the court is not bound to repeat instructions already given.

. As to the motion for a new trial, the main argument is that. the testimony did not warrant the verdict. I think it does, and the question for this court is, not whether the verdict is. right, but, is it manifestly wrong?

SIMRALL, C. J., delivered the opinion of the court.

Henry White was jointly indicted with Margaret Given for the murder of Belle Given, the infant child of Margaret. They severed in the trial. Henry White, having been convicted as charged, prosecutes this writ of error, and makes numerous assignments of error. We will notice them in their chrono-- logical order.

Several exceptions were taken to the rulings of the court in the organization of the petit jury. William Henry was. challenged, for cause, as an incompetent juror. On his *voire dire* he stated "that he had been in the court house a short. time on the morning of the commencement of Margaret Given's. trial; did not hear any of the testimony in the cause, but had been informed by the deputy sheriff that she had been con-- victed, and that his impression was that Henry White was more guilty than Margaret Given; it was merely an impres-- sion, founded on no facts, and that his mind was perfectly free. to act justly; that his impression did not amount to an opinion,. and was not such as would in the least influence his verdict in deciding upon the testimony in the cause."

In Logan's case (50 Miss., 275) an attempt was made, by an examination of the cases, to state what they settled, and it was. deduced from them that if the person offered as a juror is so " far prejudiced as to require testimony to annul a pre-opinion,. derived from whatever source or origin," he is incompetent.

" If, however, the opinion is founded from rumor, and, upon. investigation, shall be shown not to be fixed so as to create a bias or prejudice which it requires testimony to remove or overcome, then he is a competent juror." The increased

facilities, through the press and other methods, of spreading the narratives of crimes, as items of news, especially among the more intelligent classes, makes it inexpedient to lay down a fixed rule which would exclude persons who form their opinions from newspapers, or common report and rumor, unless it be of that character which impairs the impartiality of the juror by engendering a bias or prejudice which is fixed, and would require testimony to remove.

The juror Henry had heard none of the testimony on the trial of Margaret Given, or at any other time. The impression he had of the prisoner's guilt arose altogether from other sources, not from the facts—was vague and evanescent, and would not interfere with the free exercise of his judgment, and would not require testimony to remove it. We think he was a competent juror.

2. The prisoner excepted to the right of the judge to examine the members of the venire as to their qualifications. Among other questions " he asked each juror if he was opposed to capital punishment, * * * to which the defendant objected, upon the ground that it was not a proper question to be propounded."

The jury is impaneled under the supervision of the court, and it is the duty of the judge to see that it is composed of impartial persons. It was said in People v. Damon, 13 Wend., 354, that the court may set aside incompetent jurors at any time before testimony is given. That rule was approved and acted upon in Lewis' case, 9 S. & M., 118, and for the very reason complained of in the exception. Haynes, having answered " that he had formed and expressed no opinion," etc., was tendered to the prisoner as a juror, when he voluntarily stated to the court that " he had conscientious scruples about finding any man guilty of murder." The court thereupon discharged him, without challenge either on the part of the state or the accused, and that was held to be right. In Williams' case, 32 Miss., 391, the jurors were first examined by the court, and turned over to the district attorney for further

examination as to qualifications. The examination by the court as to competency was approved, the court quoting with approval the doctrine of 9 S. & M., 119 : " In all such cases it is the duty of the court to see that an impartial jury is impaneled, composed of men above all exception."

To perform that duty the approved practice has been for the judge, in the first instance, to examine the members of the venire ; the district attorney and the prisoner may pursue the examination so as to elicit all the facts, if they choose, and the court decides, as a question of law, whether the person is competent or not.

It was not error for the circuit judge to make the examination and propound the particular question. Nor was it error for the attorney for the state to peremptorily challenge Collins and Johnson, it not appearing that the challenges for the state had been exhausted.

3. When Matilda Given was offered as a witness by the state, the prisoner proposed to examine her and to introduce proof to show that she was not competent to testify in a court of justice. " The court, first stating that said Matilda had been examined before him on the previous day, and being himself satisfied that she possessed sufficient intellect to render her competent, overruled the application and refused to examine the witness," etc.

It was the right of the prisoner to test the competency of the witness, either as to religious belief—whether she recognized the obligation of an oath—or as to intellectual capacity. It is no answer that on another occasion and in a different legal proceeding the judge made such examination. The prisoner was a stranger to that inquiry, without opportunity to offer testimony or suggest questions. The witness may have been compos mentis on one day and a lunatic on another. The question is as to the competency at the time she was offered as a witness. 10 Johns., 362 ; Gelband v. Spingle, 15 Serg. & Rawle, 235 ; Evans v. Hallock, 7 Wheat., 453. This ruling was erroneous.

There is nothing in the objection to the juror Binker, that he could not read or write. That has never been enacted by statute as an incompetency. The law does not define an intellectual or educational standard.

The refusal of the court to allow the counsel for the prisoner to have any conversation with Matilda Given, she having been summoned as a witness by the defendant, and being in the court house when the trial began, is assigned for error. As part of the jury trial guaranteed by the constitution is the right to process for witnesses, and the use of the usual and ordinary means to prepare for the trial, it is usual, and often important, that the counsel should confer with the witnesses that he proposes to call. It cannot be in the power of a judge to deny to the counsel of a defendant, charged with so grave a crime as murder, conversation with his witnesses generally. That is essential to a full and complete development of his side of the case. Nor could the court deprive the prisoner of the benefit of Margaret Given's testimony. Are there exceptional reasons, applicable to this witness, which would justify the order? The prisoner was jointly indicted with her; she had been convicted, and was awaiting the judgment of the court. It will not do to assume that the conversation in progress with this witness was for any other than a legitimate purpose. Suppose that the counsel proposed to introduce the woman to prove an isolated fact important to the defense. Would it not be proper to inquire in advance as to her knowledge? It might be, if she knew nothing of it, that another witness might be sent for. Without such conversations beforehand, the prisoner might be surprised on the trial, without means or ability then to repair it with other testimony.

There may be, perhaps, extreme cases of witnesses situated like Matilda Givens, when such interviews should be allowed only in presence of the sheriff or some officer of court (but that point does not arise here); but in no state of case should the court refuse the counsel for the prisoner an opportunity to converse with the witness which he has subpœnaed, and

proposes to call, on the subject of her testimony. In this there was error.

4. It was also objected that the same witness was rendered incompetent by reason of the assurances of the judge and district attorney, given to her in open court, that whatever statements she made in testimony should not be used against her so long as they respectively were in office, but further than that they would not pledge themselves. The judge also stated that he could offer her no inducement to testify; that she would not be required to answer questions unless she was perfectly willing.

The witness could not be required to deliver inculpatory evidence, and it would present a very different question from that before us if her admissions, made under these circumstances, were resisted in a trial against herself. But, if she chose to testify against the defendant, he can not object because the evidence criminates herself. It was a privilege personal to herself to testify or not. If she waived it the prisoner can not interpose it to shield himself from the damaging effect of her testimony.

5. The testimony of Matilda Givens in reference to the conduct of Margaret, her daughter, towards her was also objected to. The mother spoke of the filial behavior of her daughter, before and after her association with the defendant, in connection with the great influence which the defendant had acquired over her. The case attempted to be established in evidence by the state was, that the defendant advised and persuaded Margaret to drown her infant, and was present, giving countenance and encouragement, when the act was done. It was legitimate to prove the influence of the prisoner over Margaret, and, as tending to show the degree of it, that Margaret was quite young, about fifteen years of age, and, prior to her acquaintance with the defendant, had been obedient and dutiful to her mother, but that the maternal control had been supplanted by the will and influence of the defendant, by her association with him. The testimony was properly admitted.

15

6. Exception is taken to the refusal of the court to grant the 5th. 7th, and 8th prayers of instruction for the defendant. It has been correctly laid down, by authority, that the court is bound to instruct the jury on all the points requested by the party pertinent to the case. The responsibility for a correct announcement of the law is upon the court. It would seem to follow, therefore, if the written requests do not, in the opinion of the judge, correctly state the law applicable to the case, that he ought to so modify them as to make them conform to the law. Nor has the defendant just ground to complain if the law is truly stated on the modification—so that it covers the points.

Nor, further, is the court under any duty to repeat instructions already given, which fully and completely cover the ground embraced in the one asked. This observation applies to the refusal of the court to give the 5th request of the defendant. The 12th instruction granted for the state embraces all that is in the 5th, refused to the defendant, and sets forth, with fullness and completeness, the law upon the subject of doubts. The whole ground had already been covered, and it could have been of no possible prejudice to refuse to go over it again.

7. It is not easy to see clearly what proposition of law was intended to be declared in the 7th instruction. The substance is :

" That, unless there has been the testimony of at least one credible witness introduced before the jury, that has established beyond all reasonable doubt that the defendant is guilty as charged, the jury will find for the defendant." The last members of it assigns the reason.

If the meaning be—as the grammatical structure of the language indicates—that one credible witness must prove every fact which constitutes the crime, it is not sound. For several witnesses may prove independent facts which, together, establish the guilt, but the testimony of one or two of them may fail to prove enough. In this case the jury might be unwilling to

rely upon the testimony of Margaret, a confederate and accomplice, although she proved every fact that makes up the crime, unless she was supported by other witnesses in some. material particulars. The testimony of an accomplice should be weighed with great caution, jealousy, and distrust, but it is impossible to say, as a question of law, that he or she shall not be believed. Lithler's case, 8 S. & M., 228. In the same case the court says: "The jury are to judge how far his testimony has been corroborated, or they may believe him, if they choose, without corroboration." Ib., Fitzcox's case, MSS. opinion.

The 8th prayer is too narrow, and fails to submit to the consideration of the jury all the elements that make up the rule of law on the subject. It assumes that if a witness swears falsely as to one material fact, courts and juries are bound, on the principles of law, to apply the maxim, *"falsus in uno, falsus in omnibus"*—that is, as we construe it, to disregard the testimony *in toto*.

The defect in the prayer is that it omits to tell the jury that the witness has willfully and corruptly sworn falsely as to a material fact. The false swearing must be willful. The prayer does not exclude the idea of mistake or misconception. Nor is it an absolute rule of law that the jury must reject the witness *in toto*. It throws strong suspicion over his credibility, and may warrant the jury to disbelieve him. It goes to his credibility. (Cases last cited.) It was not error to refuse the prayer.

For the errors herein before indicated, the judgment is reversed.