## BUTLER *v.* STATE.

Mar. 23, 1953

No. 38562 25 Adv. S. 10 63 So. 2d 779

*North & North,* for appellant.

*J. T. Patterson,* Assistant Attorney General, for appellee.

48

ETHRIDGE, J.

Appellant W. T. Butler was convicted in the Circuit Court of Holmes County of the murder of W. W. Wynn, and was sentenced to death by electrocution. On this appeal from that judgment of conviction he argues several assignments of error, but we will consider only one, since the case must be reversed on that proposition and remanded for a new trial.

According to the State's evidence the murder occurred in the early night of October 8, 1951. Wynn's body was not found until the afternoon of the following Sunday, October 14. It was lying in an overturned jeep below a high wooden bridge on a rural road in Holmes County. The State's case against appellant was based solely upon the testimony for the State of appellant's half-brother, Travis Butler, who claimed to be an accomplice in the murder and who had pleaded guilty to it. At the time of the trial of appellant, Travis Butler had pleaded guilty but had not been sentenced. We will not consider the sufficiency of the evidence of the State to support this conviction, because we hold that the trial court committed reversible error in refusing appellant's attorneys a preliminary examination into the sanity and mental capacity of the State's chief witness, Travis Butler, and in subsequently holding him a competent witness without having heard appellant's evidence on that issue.

The State introduced eight witnesses as to collateral facts, and then offered as a witness Travis Butler, who was the only witness who purported to have any knowledge of facts which would connect appellant with Wynn's death. He was sworn and gave his name. At appellant's request, the jury was retired, and the following motion was made: "We object to this witness testifying. He is a non compos mentis and is incompetent to

testify because of insanity. He is a non compos mentis, so adjudged by the Chancery Court of Grenada County and delivered to Whitfield asylum and his sanity has never been restored. We move the Court that his sanity be inquired into before going any further."

The trial court without comment overruled that motion for a preliminary examination into the witness' mental capacity. Travis Butler then testified and was cross-examined in considerable detail. At the close of his testimony, in the absence of the jury, appellant moved to exclude all of Travis' testimony "for the reason that Travis Butler is insane and we want to introduce some documentary evidence in support of that motion to exclude". Counsel offered in evidence certified copies of records of the Chancery Court of Grenada County adjudicating Travis insane in 1947. The trial court then stated: "It is a matter of procedure more than anything else. I don't think those certified copies you offer are admissible, being offered at this time. It is not your time to introduce proof. I am not cutting you off in your proof you understand." However, the court reserved his ruling thereon at that time.

The State then introduced four other witnesses and rested. After that, with the jury retired, appellant made a motion to exclude all of the State's evidence and to direct a verdict of not guilty, setting up the alleged insufficiency of the evidence to support a conviction, and the alleged insanity and mental incapacity of Travis Butler to testify. The court overruled that motion and said: ". . . in this case there was a joint indictment against Travis Butler and W. T. Butler and the Court has had full opportunity to observe the witness, Travis Butler, and has listened to his lengthy testimony, both on direct and cross examination to-day and on last Friday, this being Thursday, listened to extensive proof with regard to the witness' sanity and reached the con-

clusion that there was no reasonable theory on his not being sane.

"Of course the ruling of the Court on the present motion excludes in no way or limits the defendant, W. T. Butler, offering such testimony as he sees fit touching upon the present sanity and incompetency of the witness Travis Butler, and which might throw light on that case."

The reference above by the trial court to the "extensive proof" which the court had heard on the preceding Friday apparently had reference to evidence heard in another case, in the State's case against Travis Butler for the same murder, in which the court apparently heard testimony as to Travis' mental capacity to testify. Defendant then proceeded to present his evidence, including his own testimony. The defenses were an alibi and that the death occurred by an accident. A considerable amount of defendant's evidence, all introduced after the trial court had ruled that Travis was a competent witness, dealt with that witness' mental capacity to testify. In October 1947 Travis had been adjudicated insane and dangerous by the Chancery Court of Grenada County, and that adjudication had not been set aside nor had he been adjudicated sane since that time. His mother testified, as did other witnesses, concerning his mental and emotional deficiencies. She said in substance that he had been an habitual drunkard since the age of 11, that when he was drunk he was dangerous, and that he was taken out of school at the age of 16 when he could get no further than the third grade. Dr. Waldron, a psychiatrist, testified in rebuttal for the State that he had examined Travis for three hours the week before the trial, that he was a mental defective, a "high grade moron", but without psychosis, sane, and able to observe, recollect and narrate what he observed. We, of course, do not express any opinion with reference to the witness' competency, but mention this testimony to indicate that the trial court had heard none of it when the court made

its ruling on the witness' competency. Defendant's subsequent request for a peremptory instruction was refused, and the case went to the jury on a number of instructions as to the law.

██ Appellant argues, correctly we think, that the trial court erred in refusing his motion for a preliminary examination into the mental capacity of Travis Butler to testify, and this was a substantial, procedural right guaranteed to him by the due process clauses of the federal and state constitutions; that Travis had been adjudicated insane in 1947 and that that adjudication had never been set aside; that appellant had a right to present to the trial court evidence as to Travis' mental capacity before his testimony went to the jury; and that the court further erred in basing his opinion in part upon a record and evidence concerning Travis' mental condition which were given in an entirely different case, State v. Travis Butler, in which appellant had no opportunity to cross-examine the witnesses or to present his evidence thereon.

In recent years the courts have greatly relaxed the rigorous common law rule that an insane person is wholly incompetent to testify. It is now said that a lunatic is competent as a witness if at the time he is offered as a witness he has sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue. 58 Am. Jur., Witnesses, Section 118. Hence an insane person may or may not be a competent witness; his incompetency on that ground must be determined by the court. The mental capacity of a witness to meet the foregoing standards is for the trial court, in its sound discretion, and in the event that court rules that the witness has sufficient mental capacity to testify, the credibility of the witness and the weight and value to be given to his testimony is for the jury. 3 Wharton, Criminal Evidence

(11th ed. 1935), Section 1154. **(Hn 4)** The burden is upon the objecting party to establish the incompetency.

The general rule is stated in 58 Am. Jur., Witnesses, Section 211: ''A party offering evidence must first qualify his witness to speak as to the subject matter. In case of timely objection to the competency of a person offered as a witness, it is the duty of the court to make such examination as will satisfy it as to the competency or incompetency of the person to testify, and thereupon to rule on the objection accordingly. It may not refuse such examination on the ground that the question was raised and decided on another occasion and in a different legal proceeding.''

Section 124 of the same text says that ''In case of a preliminary objection that a witness is not mentally competent to testify, the court must determine the question . . . The better practice is to have the witness produced and examined before the court.''

These same principles are stated in 70 C. J., Witnesses, Section 254, in which it is said: ''When an objection is raised to the competency of a witness the court should examine into and determine the question of competency before the witness is allowed to testify; . . . when the witness is a very young child it is the duty of the court to examine him in order to determine his competency before allowing him to testify, at least where the party against whom he is to testify demands such examination.''

3 Wharton, Criminal Evidence (11th ed. 1935) Section 1150 states: ''The modern rule is that an objection to competency should be made at least as soon as the witness is sworn and before he gives any testimony, if the incompetency is known, otherwise as soon as it is discovered or becomes apparent. Until this is done, there is no duty by the trial court to pass upon his competency.''

Ibid. Section 1151 says that "if a party is in doubt as to the qualification of a witness, he should examine him in that regard preliminarily . . . Whenever possible, the competency of a witness should be determined when he is produced." And it is said, citing White v. State, 52 Miss. 216 (1876), which will be discussed infra, that the rule is as follows: "It is still the privilege and right of the objector, however, to have the witness examined on his voir dire before he is sworn. And the denial to counsel for the accused of the right so to examine on voir dire a witness for the purpose of determining such competency, upon the ground that the judge had in another case investigated the question of the qualification of the witness and found him to be competent, constitutes reversible error." See also Ibid. Sections 1147-1155, 1170-1182.

In brief the general rule recognized by all of the authorities is that a party defendant, when he asks for it, is entitled as a matter of right to a preliminary examination into the mental capacity and competency to testify of the proffered witness and to a decision on that issue by the trial judge.

Mississippi has at least since 1876 applied this rule. In White v. State, 52 Miss. 216 (1876), White was convicted of the murder of a child and sentenced to life imprisonment. He had been indicted jointly with Margaret Givens for the murder of her child. There was a severance. At the time of White's trial Margaret Givens had been tried and convicted but not yet sentenced. Matilda Givens was the mother of Margaret Givens. Matilda was offered as a witness by the State, and defendant's counsel proposed preliminarily to examine her touching her mental competency as a witness. This was refused by the trial court "upon the ground that the court had, on a former trial in another case, examined the witness and pronounced her competency to testify." This prior case apparently was the trial of Margaret

Givens. This Court in an opinion by Chief Justice Simrall reversed the conviction for several errors. One of them was the refusal of the trial court to permit appellant to have a preliminary examination into the witness' mental capacity. The court said: "When Matilda Givens was offered as a witness by the state, the prisoner proposed to examine her and to introduce proof to show that she was not competent to testify in a court of justice. 'The court, first stating that said Matilda had been examined before him on the previous day, and being himself satisfied that she possessed sufficient intellect to render her competent, overruled the application and refused to examine the witness,' etc.

"It was the right of the prisoner to test the competency of the witness, either as to religious belief—whether she recognized the obligation of an oath—or as to intellectual capacity. It is no answer that on another occasion and in a different legal proceeding the judge made such examination. The prisoner was a stranger to that inquiry, without opportunity to offer testimony or suggest questions. The witness may have been compos mentis on one day and a lunatic on another. The question is as to the competency at the time she was offered as a witness. 10 Johns., 362; Gelband v. Spingle, 15 Serg. & Rawle, 235; Evans v. Hallock, 7 Wheat., 453. This ruling was erroneous."

The White case is directly in point on the issue here in two principal respects. First, the learned trial judge in the instant case based his overruling of deefndant's motion to exclude the State's testimony and direct a verdict for the defendant, which motion was based in part upon the incompetency of Travis Butler as a witness, on the ground that in the preceding week in another case the court has "listened to extensive proof with reference to the witness' sanity and reached the conclusion that there was no reasonable theory on his not being sane." A similar action of the trial court in the *White*

case, along with other errors, was held to be reversible error. This is also the general rule elsewhere. 58 Am. Jur., Witnesses, Section 211.

In the second place, the *White* case held that ''it was the *right* of the prisoner to test the competency of the witness'' as to mental capacity by a preliminary examination prior to his testimony being submitted to the jury. This right is an established part of procedural due process under Mississippi Constitution, Section 14, and United States Constitution, 14th Amendment.

In Hunter v. State, 137 Miss. 276, 102 So. 282 (1924), appellant was convicted of murder upon the uncorroborated evidence of an accomplice who was barely intelligent enough to be a witness. The trial court had held a preliminary examination as to the witness' mental capacity and had held him competent to testify. This ruling was affirmed. It was held that the evidence was sufficient to support that finding and the conviction. This case indicates the accepted practice of having a preliminary inquiry. McNally v. State, 213 Miss. 356, 56 So. 2d 834 (1952).

In Thompson v. State, 158 Miss. 121, 130 So. 112 (1930), appellant was convicted of assault and battery with intent. The conviction was based upon the testimony of the injured man, Greer. He testified on a stretcher that he had sustained a fractured skull. Apparently appellant did not ask for a preliminary examination. After Greer had testified, appellant moved to exclude his testimony on the ground that he was mentally incapable of testifying. The court then gave its opinion that Greer was competent and overruled the objection. Appellant had failed to make a timely motion for a preliminary inquiry.

In Jackson v. State, 158 Miss. 524, 130 So. 729 (1930), appellant was convicted of murder, and the conviction was affirmed. The only witness to the killing was decedent's seven year old son, who testified for the

State. No objection to the competency of this witness was made until the close of his cross-examination. The court held that the child's testimony showed the witness to be competent, and that, moreover, the objection to the competency was made too late. It said that appellant's duty, if he desired to raise the question, was to object to the competency of the witness before he testified, and that if the court had committed any error in not having a preliminary inquiry, that error was cured.

In Fairley v. State, 152 Miss. 656, 120 So. 747 (1929), appellant's conviction of rape was affirmed. The four year old daughter of the prosecutrix was offered by the State as a witness, and the court, without conducting a preliminary examination to determine the child's mental capacity, permitted her to testify. It does not appear that appellant asked the court for a preliminary examination. Appellant cross-examined the witness, and thereupon the court instructed the jury not to consider anything which she had said. Appellant assigned as error the action of the court in permitting the child to testify before jury, and contended that the error could not be cured by excluding her testimony subsequently. However, it was held that the court did all that it was requested to do to correct the error by excluding her testimony, and that the examination of this witness before the jury did not constitute reversible error.

In the *Fairley* case the court approved the rules for determining the capacity of a witness to testify, as announced in Peters v. State, 106 Miss. 333, 63 So. 666 (1913). There appellant's conviction of rape of a six year old girl was affirmed. The child was introduced as a witness for the State, and testified without objection. ''The court was not requested to and did not inquire into the question of her capacity to give testimony.'' When the State rested, appellant made a general motion to exclude and assign as one ground the child's incompetency. The court held that the trial court

properly exercised its discretion in admitting her testimony, and with reference to appellant's assignment of error said: "The question of capacity of a witness to give testimony cannot be raised in this method. It must be raised while the witness is on the stand so that the court may have an opportunity of inquiring into and correctly deciding it."

In Wilson v. State, 204 Miss. 111, 37 So. 2d 19 (1948), appellant was convicted of forgery. The name charged to have been forged was Johnnie Sadler. It was there said: "The defense of appellant was that Johnnie Sadler was her common law husband, and authorized her to draw on his bank account. He denied such authorization, and that he was appellant's common law husband. When he was offered by the State as a witness against her, she objected that he was incompetent as a witness because of such relationship; requested, and was denied a full preliminary investigation of that question in the absence of the jury. We think this was reversible error. The competency of husband and wife as witnesses against each other is governed by Section 1689, Code 1942."

The general rule is stated in 58 Am. Jur., Witnesses, Sections 124, 134, 210-211; see also 70 C. J., Witnesses, Section 259, page 151; Anno. 26 A. L. R. 1491; 148 A. L. R. 1140. In annotation 37 L. R. A. 423, 424, it is stated that whether a witness is so insane as to be incompetent to testify is a preliminary question to be decided by the court.

In State v. Cremeans, 62 W. Va. 134, 47 S. E. 405, 410 (1907), appellant was convicted of murder. The conviction was reversed and remanded for several errors. A witness named Lunsford was offered by the State, and the defendant objected on the ground that he had been confined in an insane asylum and was a lunatic, and asked for a preliminary examination. The denial of this was held to be a reversible error. The court said: "The question of the competency of the witness having been

raised, the court should have determined that question upon a careful examination into the facts and condition of the mind of the witness. The question of his competency is for the court, and not for the jury.'' To the same effect is Thomas v. Commonwealth, 300 Ky. 480, 189 S. W. 2d 686 (1945).

The due process clauses of the federal and state constitutions require that a trial be conducted according to established criminal procedures, with an adequate opportunity to be heard in defense. 16 C. J. S., Constitutional Law, Section 579, 591.

Due process requires that a party shall have the right to raise such issues or set up any defense which he may have in the cause at the proper time and according to established procedures. This includes the right to introduce evidence and to have judicial findings based upon the evidence in the case. 12 Am. Jur., Constitutional Law, Sections 608, 609, 621. And this includes the right to a preliminary examination of a witness' capacity to testify, when the motion therefor is timely made.

In Warren v. State, 174 Miss. 63, 164 So. 234 (1935), appellant was convicted of murder and the conviction was reversed. The State offered his confession and produced its evidence upon the preliminary inquiry. Appellant objected to the confession and offered himself as a witness to show it was involuntary. The trial court refused to hear him at that time on that issue. It was held that this was the denial of a right guaranteed to him by Mississippi Constitution, Section 26, and that the right to be heard ''means the right to be heard at the proper time, and is not satisfied by so postponing the right as to make it in whole or in part ineffective, or to a time when to avail of it entails the acceptance of conditions which may not lawfully be imposed upon the accused.''

In Morroco v. State, 204 Miss. 498, 37 So. 2d 751 (1948), appellant's conviction of manslaughter was reversed.

The State offered a confession. Upon a preliminary hearing the State offered certain evidence, but only the State was permitted to introduce any evidence. The defendant was limited to cross-examination of the State's witness. It was held that "the trial judge should have heard the evidence proffered by appellant, and determined this matter before relegating him to the jury, thereby imposing an extra and unfair burden on him."

It therefore appears that the established rule in this and other states is that a defendant has a right to have a preliminary inquiry by the court into the sanity and mental capacity of a witness to testify, if he asks for it before the witness has testified, and that a refusal of that right constitutes the denial of a substantial right protected by the due process clauses of the federal and state constitutions. ■■■ The motion for a preliminary inquiry here included a statement by appellant's counsel to the court that appellant had been adjudicated a non compos mentis by the Chancery Court of Grenada County and that his sanity had never been restored. Although, of course, this is not conclusive upon the preliminary inquiry, a prior adjudication of insanity creates a rebuttable presumption of his continued insanity. 58 Am. Jur., Witnesses, Section 121; Wharton, ibid., Section 1178.

■■■ The trial court could not rely upon evidence heard by it on another occasion and in a different legal proceeding to which the appellant was a stranger, and in which he had no opportunity to offer testimony or to propound questions. White v. State, supra; Bridgeman v. Bridgeman, 192 Miss. 800, 6 So. 2d 608 (1942). ■■■ It is no answer to say, as the State does, that even if it was error to refuse the preliminary inquiry, still it was not prejudicial but only harmless error, since subsequently appellant went ahead and introduced evidence, including documentary evidence and oral testimony, in presenting his case in chief; that an instruction submitted to the jury the issue of Travis Butler's mental capacity as affecting

his credibility, and that the jury found that he was competent. If this were correct, then a defendant whose motion for a preliminary inquiry into a witness' mental capacity was overruled would be at a considerable disadvantage, since he either would have to omit the production of evidence as to the mental capacity of the State's witness in order to avoid a waiver of the error, when he appealed; or he would have to go ahead and produce evidence on that issue in his case in chief and thereby give up an important procedural right which he has. In either event, the result would stem from the erroneous refusal of his substantial, constitutional right to a preliminary inquiry, when he has asked for it at the proper time.

The State further says that if the court had heard the testimony in the absence of the jury and then had held the witness to be competent, that would only have served to require all of the testimony to be repeated again before the jury. That may be true, but the consumption of time in the trial must be weighed against the due process right which a defendant has, upon motion timely made, to have the court consider preliminarily all of the evidence as to the witness' mental capacity, prior to permitting him to testify. It is suggested that the court's action, at the end of the State's case, in overruling the motion to exclude, constituted a ruling by the Court at that time on the sanity of Travis Butler, after it had heard his testimony and other testimony for the State. But at that point the court had not heard any of the defendant's evidence as to Travis Butler's mental ability to testify. And defendant had the right to contest this issue with the State by presenting to the trial court his evidence on it.

For these reasons the judgment of conviction must be reversed and the case remanded for a new trial. We do not now express any opinion on this witness' mental

capacity to testify. That will have to be developed in the circuit court on a new trial.

Reversed and remanded.

All Justices concur.