Norman John HENDRIX and Carolyn
Sue Torbert, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 19824.

United States Court of Appeals
Fifth Circuit.

Jan. 31, 1964.

Thomas M. Haas, Mobile, Ala., for appellants.

Vernol R. Jansen, Jr., U. S. Atty., William A. Kimbrough, Jr., Asst. U. S. Atty., Mobile, Ala., for appellee.

Before TUTTLE, Chief Judge, and POPE * and JONES, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from a conviction and sentence of the appellants on four counts of an indictment charging them with transporting, or causing to be transported, or aiding and abetting in transporting or causing to be transport-ed, certain falsely made and forged checks in violation of 18 U.S.C.A. § 2314. The Government abandoned all counts except 7, 8, 9 and 10. The appellants were tried and convicted on all four of these counts. Hendrix received a senence of forty-two months and appellant, Torbert, was given a sentence of thirty months. The sentences were general and are within the statutory limits for a single count. Sentences may therefore be sustained if the convictions on any count are upheld. Greene v. United States, 358 U.S. 326, 79 S.Ct. 340, 3 L.Ed. 2d 340; Fowler v. United States, 5th Cir., 1956, 234 F.2d 695; Morales v. United States, 5th Cir., 1956, 228 F.2d 762. The only substantial question on this appeal is the sufficiency of the evidence to withstand the appellants' motions for acquittal. We conclude that there was sufficient evidence for the jury to find a verdict of guilty as to Hendrix. There was not sufficient evidence to warrant the submission of the charge against Torbert to the jury.

Two of the co-defendants, Huey L. Shelton and David Sykes, had entered pleas of guilty as to certain of the counts and they testified on behalf of the Government. Shelton's testimony was fairly complete and almost sufficient of itself to warrant submission of the case against Hendrix to the jury. Sykes had a severe lapse of memory and his testimony contributed little of value to the Government's case other than the essential proof that the checks were carried in Hendrix' automobile from Mobile, Alabama, to Pascagoula where all four of them were cashed.

From Shelton's testimony the jury could find that Shelton, a former employee of the Jim Walter Corporation in Mobile, broke into the office and stole eighty check forms imprinted with the company name and bearing consecutive numbers, that the four checks on which the convictions were had were included within these four numbers; that he took these checks to a trailer belonging to

* Of the Ninth Circuit, sitting by designation.

Hendrix and there, in the presence of Torbert and Sykes and another woman, delivered the checks to Hendrix. A few hours later he borrowed a typewriter and took it to the trailer. He then made an agreement with one James W. Barnett to procure from him a driver's license, Social Security identification, club cards and credit cards issued to Barnett, in return for a promise to give Barnett $150. He took these credit cards to Hendrix and told him how to make the checks out, giving him the name Wayne L. Tullos as the name of an authorized signer for the checks. Shelton testified that he knew a man by the name of Tullos was an authorized signer for the Jim Walter Corporation but he did not remember his first name. The name Wayne L. Tullos he said was fictitious.[1]

Approximately two days later, according to Shelton's testimony, he talked with Hendrix to see if any of the checks had been cashed. Hendrix told him he didn't want to cash the checks, that Shelton should come back and get them. But when he went back to the trailer, Hendrix gave him approximately thirty-five checks and said that all the rest of the checks he had kept or destroyed or was going to destroy them. He also returned an identification of one K. C. Bush, which Shelton had previously furnished but he did not return the Barnett identification. Shelton also got the typewriter back. Although no proof was tendered that the checks had been prepared by any particular typewriter, it is to be noted that all four of the checks on which the convictions were had were filled out on a typewriter and all were made payable to James W. Barnett. There are several typographical errors that are consistent throughout, such as the spelling of the month of "Janurary" and the word "ninty" on the face of three of the checks which were made out for the sum of $192.06. All four of the checks are signed by a signature purporting to be that of Wayne L. Tullos.

From Sykes's testimony the jury were given the following facts: Early in January of 1962, Hendrix, Torbert, Sykes and one Jean Stain drove from Mobile, Alabama to Pascagoula, Mississippi, in Hendrix' automobile taking a number of Jim Walter Corporation checks with them. The four checks covered by the four indictments before us all bearing the name of James W. Barnett as payee, and purporting to be signed on behalf of the Jim Walter Corporation by Wayne L. Tullos, were cashed in Pascagoula. These checks were drawn on the Central Branch of the American National Bank and Trust Company of Mobile and were presented to this Branch Bank for payment. Payment had been stopped on all of them and they were returned to the stores in Pascagoula that had cashed the checks. Sykes, who failed to remember everything except his own acts on that day and failed to remember a great deal of what he himself did, testified that he took a check out of the pile of Jim Walter checks lying behind the back seat of Hendrix' automobile and cashed it somewhere in Pascagoula. There was no positive proof as to which, if any, of the four checks upon which the convictions were had was the one cashed by Sykes. He had pleaded guilty to Count 10 of the indictment which dealt with check No. 5130 for $242.50. Of course, his plea of guilty is not evidence against either Hendrix or Torbert of the commission by them of any of the ingredients of the offense admitted by Sykes, 2 Wharton's Criminal Evidence, 12th Ed. 215 § 439. The only manner in which the Government could hope to connect Hendrix with the act of Sykes with one of the checks of the indictment was by the proof of the witness E. A. Corlew, who testified that he had

---

1. The testimony at this point was as follows:

"Q. Tell us what happened after that between you and Mr. Hendrix.

"A. I explained to the man exactly how to make the check out, because I had made several of them out, and left him a handwritten copy of one of the checks to go by, and I turned around and left the trailer at approximately seven or seven-thirty that night."

cashed check No. 5127 for $192.06 at the Town Market in Pascagoula. When he was first asked if he saw in the courtroom the person who presented the check to him, he said, "This fellow right here, I could be mistaken", pointing to Hendrix. He then said, "I could be wrong, but, in my estimation and insight this is the man." On cross-examination he was asked if he was sure of his identification. The witness answered, "I would not be too sure. I want to be fair to him. He looks very much like him. * * * " Then, after a recess, defense counsel put Corlew on the stand the second time and established that during the recess he had pointed David Sykes out to Corlew and then asked him, "Q. Now I want to ask you if that could have been the man who cashed that check at your place in Pascagoula?" Corlew answered, "Yes Sir I was wrong it was that man, in my estimation, I would not be too certain but I really think it is I just made an error." Then the question was asked, "You are talking about Sykes in the cell?" And Corlew answered, "Yes Sir."

Efforts made by the Government to prove the identity of the person who cashed two of the other checks covered by the indictment fell short of the requirements for the making of an identification. Two separate women cashiers of stores in Pascagoula stated that two of the checks had been presented to them by a woman between twenty-eight and thirty years of age, weighing some 130 pounds, in tight, green pedal pushers and with her hair in balloon curlers with a scarf over it. Neither of the witnesses could positively identify Carolyn Torbert as the person thus described. Another witness from a third store testified that a woman of the same description had bought some articles in the department store in which she worked but she did not testify as to the cashing of a check. While she said she believed she could recognize her customer and said that Torbert looked a lot like her, there is no evidence to connect Torbert with any check on this particular purchase.

■■ We can find no evidence in the record that could properly permit the submission of the issue of guilt or innocence of the appellant, Torbert, to the jury in the absence of any testimony connecting her with the cashing of one or more of the forged checks. Her presence when Shelton delivered the blank checks, the typewriter and the identification cards to Hendrix and her presence in the car on the trip from Mobile to Pascagoula, might well show knowledge by her that a criminal undertaking was afoot. But these facts do not show that she was a participant, either as a principal or as an aider or abettor, Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919; United States v. Garguilo, 2nd Cir., 310 F.2d 249. While questions of identity are ordinarily for the jury and testimony as to identity need not be positive and certain, Davis v. United States, 10th Cir., 78 F.2d 501, there must be something more than the testimony of a resemblance and the fact that the person sought to be identified was accompanying the persons who are more clearly tied in with the offense charged. For a general discussion of this question see 23 C.J.S. Criminal Law § 920, p. 643 et seq.

With respect to the appellant Hendrix, however, the case stands quite differently. There can be no question but that the evidence showed that four crimes had been committed dealing with the four checks which were the subject of the four counts in the indictment, that is to say, someone had knowingly and willfully caused these falsely made checks to be transported in interstate commerce. There can hardly be any question, we think, but that the undisputed acts of Hendrix obtaining the checks with the purpose, as disclosed by his agreement with Shelton, to make them out to a fictitious payee by the use of a forged signature for the purpose of obtaining money of which he was to pay Shelton ten percent of the proceeds, his borrowing of the typewriter at the time he received instructions from Shelton as to

how to make the checks out and the later appearance of the checks in typewritten form, would warrant a finding by the jury that the checks had been made out at least to the extent of inserting the name of James W. Barnett, a fictitious payee, and the forged signature of Wayne L. Tullos by Hendrix before being taken in his automobile to Pascagoula. The indictment did not charge this transportation as the crime, but the jury could find that Hendrix furnished the checks already illegally prepared for the subsequent cashing.

A legally sufficient case against Hendrix existed once there was proof to show that he had entered into an agreement to use these checks in a fraudulent manner, that they were·falsely made in the manner he was familiar with, that he had complete control of them, that he transported them to Pascagoula, that he was present in the automobile at the time they were being presented for payment and being cashed in Pascagoula, and that he, together with his companions, went on away from Mobile in what the jury might well consider as flight after the checks had been cashed. Viewing the evidence that was submitted to the jury in the light most strongly in favor of the Government on a motion for acquittal, we have no difficulty in deciding that there was ample evidence to warrant a finding by the jury that Hendrix actually did exactly what he undertook with Shelton to do, that is, to falsify the checks and use a fictitious payee and forged signature in order to get money on the checks. And when it appears that this was done by some person even though that person's identity is not proven, the jury could find that Hendrix was acting as a principal in "causing these falsely made and forged securities to be transported in interstate commerce."

■ Moreover, since the indictment charged Hendrix as an aider and abettor as well as a principal, there can be even less doubt about the propriety of the jury's finding that Hendrix was guilty of the offense as charged. In order to sustain the conviction of a defendant who

had been charged as an aider or abettor, it is necessary that there be evidence showing an offense to have been committed by a principal and that the principal was aided or abetted by the accused, although it is not necessary that the principal be convicted or even that the identity of the principal be established. See Edwards v. United States, 5th Cir. 1960, 286 F.2d 681; Gray v. United States, D.C.Cir.1958, 104 U.S.App.D.C. 153, 260 F.2d 483; Meredith v. United States, 4th Cir. 1956, 238 F.2d 535; Colosacco v. United States, 10th Cir. 1952, 196 F.2d 165; Karrell v. United States, 9th Cir. 1950, 181 F.2d 981, cert. den. 340 U.S. 891, 71 S.Ct. 206, 95 L.Ed. 646; United States v. Klass, 3rd Cir. 1947, 166 F.2d 373; Von Patzoll v. United States, 10th Cir. 1947, 163 F.2d 216, cert. den. 332 U.S. 809, 68 S.Ct. 110, 111, 92 L.Ed. 386, 387. In the record here there is evidence that offenses were committed. Two of the forged checks were cashed by the woman in green pedal pushers with red hair in balloon rollers. She may have been the appellant Torbert, but she may have been someone else so far as the proof shows. One of the checks was cashed by a man who was possibly Hendrix, possibly Sykes, possibly neither.

We have no difficulty in saying that the proof of Hendrix' association with, and identification with, these checks as to which the crime was committed amply sustains a determination of his guilt as an aider and abettor.

In light of what has been said, it is not necessary for us to determine whether the jury could properly find from the testimony by Corlew that Sykes was the person who cashed check No. 5127, although Corlew's corrected testimony, coupled with Sykes's admission that he did cash a check in Pascagoula and that he cashed only one while there, may have been sufficient to warrant this issue being presented to the jury. Neither do we need to decide whether the fact that Corlew had decided before he actually sent the checks through for collection that it was bad would prevent Sykes's conduct from satisfying the requirement that he will-

fully and knowingly transported, or caused to be transported, this particular check in interstate commerce, see United States v. Gardner, 7th Cir. 1948, 171 F.2d 753.

■ The appellants complain of the court's charge to the jury. They contend that the court did not define the offenses with enough particularity. The court referred to the indictment as containing the elements of the offense and observed that the language of the indictment was not overly technical in its phrasing. The appellants complain of the court's comment that the case was there "because it has an interstate commerce feature to it." The statement was correct and proper. But for the interstate commerce feature it would have been a state offense for trial in the state courts.

■ When Government witness Sykes was having his obviously deliberate memory lapses, Government counsel was permitted to examine him, out of the presence of the jury, to determine whether or not he was a hostile witness. Appellants' counsel was refused the opportunity to cross-examine on this *voir dire* examination. The examination, out of the jury's presence, terminated with the court's announcement that Sykes could testify but not in such fashion as to prejudice his rights. The *voir dire* examination and the conduct of it were in the court's discretion. The appellants have not been prejudiced by the court's ruling and no abuse of discretion is shown.

■■ In the cross-examination of the Government's witness Barnett, the court curtailed examination as to collateral matters by appellants' counsel, saying, "We are going too far afield." The scope of cross-examination is left largely in the discretion of the trial court. In the absence of an abuse of discretion the trial court's ruling will be upheld. Roberson v. United States, 5th Cir. 1957, 249 F.2d 737, 72 A.L.R.2d 434, cert. den. 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715. No abuse is shown.

■ On cross-examination by appellants' counsel of the witness Shelton, it was elicited from the witness that he had pleaded guilty to all ten of the counts of the indictment. The witness was asked what sentence was imposed and gave an ambiguous answer. He was asked whether he hoped his testimony would help him and he gave an affirmative answer. The court then stated to the jury the situation with respect to the sentencing of Shelton. Since the matter had been put before the jury by the appellants, it was proper that the court correctly inform the jury as to what had transpired. Perhaps there was an overelaboration in the court's statement, but no prejudice to the appellants resulted from it and no error was committed.

The court permitted Government witness Wells, who was jointly charged with Hendrix in Counts 1 to 6, inclusive, of the indictment and who had pleaded guilty, to testify as to criminal activity of the appellant Torbert, not directly related to the offenses for which the appellants were then being tried. In view of the fact that we are vacating the judgments of conviction against Torbert and in view of the fact that this testimony in no way prejudiced Hendrix, no further notice need be taken of this point.

The conviction of Carolyn Sue Torbert will be vacated and set aside. If additional evidence is available, sufficient in the opinion of the United States Attorney, to warrant conviction there should be a new trial; otherwise the indictment as to her should be dismissed. The judgment and conviction of Hendrix are affirmed.

POPE, Circuit Judge.

I concur in Judge TUTTLE'S opinion. I also wish to add that in my view the record sufficiently discloses evidence which would warrant the jury in finding that Hendrix aided and abetted Sykes, one of the persons who drove from Mobile to Pascagoula with the checks in Hendrix's automobile, in cashing a check in Pascagoula. In so doing he caused the check to be transported in interstate commerce in violation of § 2314 of Title 18 U.S.C. in the manner described in Pereira

v. United States, 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435.[1]

It is true, as noted in the opinion, that the witness Corlew first, with some hesitation, identified Hendrix as the man who presented the check which he cashed, and later, when returned to the stand by defense counsel, stated that Sykes was the man who presented the check. This was after a recess when Corlew had had a look at Sykes. At this time he stated that he had been in error in his former identification of Hendrix. This does not mean, as suggested in the dissenting opinion that, "One statement offsets the other and neither should be given any testimonial value."

The dissent cites Wigmore § 1018 to support the quoted statement. I am unable to find anything in Wigmore to support such a view. In that section Wigmore simply argues for his position that where a witness is impeached by proof of a prior contradictory statement, such prior contradictory statement should have affirmative testimonial value, a position which he proceeds to state is universally rejected by the courts. His discussion in § 1018, as I read it, does not touch any question before us. On the other hand, in § 1017, footnote 2, he states what I understand to be the universal rule in respect to cases of self-contradiction, "It is likewise an error to regard the self-contradiction artificially as 'nullifying' the opposite statement." [2]

I think that the case of United States v. Gardner, 7 Cir., 171 F.2d 753, is not apposite here. What was said in that case was unnecessary to the decision, was pure dictum, and predicated on a supposed analogy with the case of a stolen motor vehicle recovered before it crossed the state line; that is to say, a case where there was no transportation in interstate commerce. Such was not the case here.

It is true that Corlew had sent the check to his own bank in Pascagoula which refused to accept it; and he had doubts whether the check was good even while his employee was going to the bank with the check. Corlew's account of his mental attitude with respect to the ultimate payment of the check is not at all points entirely consistent; but he did send it to Mobile and he testified as follows: "Q. You sent it to Mobile to see if it was good? A. Yes, hoping it was." This the jury had the right to believe and the proof that Sykes "caused" the check to be transported to Mobile within the meaning of the Pereira case, supra, is not affected by the fact that Corlew had his fingers crossed when he sent it through.

JONES, Circuit Judge (dissenting).

I cannot join the majority in the determination that there is enough evidence to submit the question of the guilt of Hendrix.

Hendrix had the blank checks, but no witness said he filled in the blanks. Hendrix borrowed a typewriter and the blanks on the checks were filled in with a typewriter, but no witness said that Hendrix typed the checks or that they were typed with the borrowed typewriter. Hendrix had Barnett's identification cards and Barnett's name was used as the payee of the forged checks, but no witness said that the cards were used by Hendrix or anyone else in connection with the negotiation of the forged checks, on in any other fashion. Hendrix' car, with Hendrix driving, took the check blanks to Pascagoula, but no witness said that the check blanks were then filled in, or that they were filled in by Hendrix or

---

1. "When Pereira delivered the check, drawn on an out-of-state bank, to the El Paso bank for collection, he 'caused' it to be transported in interstate commerce."

2. The rule is stated in 98 C.J.S. Witnesses § 627, p. 640, as follows: "§ 627. In General—Proof that a witness has made statements inconsistent with, or contradictory of, his testimony is proper to be considered as bearing on his credibility, and may justify disbelief of his testimony; but such proof is only evidence tending to impeach the witness, and it does not require that his testimony be rejected."

by anyone with whom he was acting in concert. Hendrix obtained the checks with the purpose of converting them into forgeries to be passed and money obtained, but no witness identified Hendrix with filling in the blanks; no witness, except Corlew, identified Hendrix as cashing the checks; no witness identified Hendrix as aiding or abetting another or others in doing so.

Corlew identified Hendrix as cashing the Count 8 check with him, then wavered, and on examination by counsel for Hendrix he repudiated his identification and named Sykes as the person who had delivered him the check. Certainly Corlew's initial identification of Hendrix cannot be used to convict Hendrix of cashing the check. Nor, I submit, can Corlew's impeachment of his own testimony be regarded as substantive evidence of the cashing of the check by Sykes and the basis of the conviction of Hendrix as an aider and abettor of Sykes in cashing the check. One or the other of Corlew's statements was false, and perhaps both were false. One statement offsets the other and neither should be given any testimonial value. Cf. III Wigmore on Evidence 687, § 1018.

But if the majority position is correct in concluding that Corlew's identification of Sykes is, with the evidence of Hendrix' obtaining the blank checks and bringing them to Pascagoula, enough to permit an inference of aiding and abetting of Sykes by Hendrix, I think the conviction of Hendrix must be set aside for another reason. When Corlew cashed the check he suspected it was not good. When Corlew put the forgery into the flow of commerce he knew it was not good. This being so, the offense here charged was not committed. United States v. Gardner, 7th Cir. 1948, 171 F.2d 753.

I have no difference with the statement of the majority that an accused can be convicted of aiding and abetting a principal, even though the identity of the principal is not established. But I do not agree that the conviction should be sustained where no connection is shown between the accused and the unknown principal. The checks were stolen property and the evidence might have sustained a conviction of Hendrix of interstate transportation of stolen property, but he was not so charged. The evidence might have sustained a conviction of Hendrix of a conspiracy to transport interstate forged securities, but he was not so charged. The trial judge, during a portion of the trial, thought the offense charged was conspiracy. I am not fully persuaded that this erroneous notion was ever entirely out of the case. I dissent.