**Robert Eddie Louis JACKSON, Appellant,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.**

**No. 24470.**

United States Court of Appeals
Fifth Circuit.

Jan. 15, 1968.

Rehearing Denied Feb. 13, 1968.

---

E. H. Brown, Houston, Tex., for appellant.

Douglas H. Chilton, Asst. Atty. Gen., Austin, Tex., for appellee.

Before BROWN, Chief Judge, and HUTCHESON and WISDOM, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant is incarcerated under sentence of death, having been convicted by a Texas jury of murder with malice. The Texas Court of Criminal Appeals affirmed the conviction, Jackson v. State, 403 S.W.2d 145 (1966), and later refused habeas corpus. We affirm the denial of federal habeas corpus relief.

■ An initial challenge is to the trial court's receipt of testimony relative to an inculpatory statement made by appellant before he was given the warnings required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12

L.Ed.2d 977 (1964). This complaint was not presented to the Texas courts or to the court below; consequently, it is not available for our consideration.[1]

Two other errors relate to the competence of prosecution witness Albert Bowie, the mentally retarded adult son of the victim. Appellant introduced probate records which showed that Albert had been adjudged non compos mentis some years prior to the trial, and objected to receipt of the testimony on the ground that Albert was not a competent witness. The state presented two rebuttal witnesses, one a sister of Albert. Both asserted that Albert was, although retarded, honest and able to relate the truth. In his qualification of the Bill of Exception to allowance of Albert's testimony, the trial judge revealed that he had observed Albert during the course of the trial and had engaged him in private conversation immediately prior to his taking the stand. The decision on competence was based at least in part upon this association to which appellant was a stranger.

■ Appellant's contention that Albert was not competent is a contest to the discretion of the trial judge. Henderson v. United States, 218 F.2d 14, 50 A.L.R.2d 754 (6th Cir.), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253, reh. denied, 349 U.S. 969, 75 S.Ct. 879, 99 L.Ed. 1290 (1955); Doran v. United States, 92 U.S.App.D.C. 305, 205 F.2d 717, cert. denied, 346 U.S. 828, 74 S.Ct. 49, 98 L.Ed. 352 (1953); Saucier v. State, 156 Tex.Cr.R. 301, 235 S.W.2d 903, cert. denied, 341 U.S. 949, 71 S.Ct. 1016, 95 L.Ed. 1372, reh. denied, 342 U.S. 843, 72 S.Ct. 23, 96 L.Ed. 637 (1950). Review of such discretion presents no federal question. Fernandez v. Klinger, 346 F.2d 210 (9th Cir. 1965); Buder v. Bell, 306 F.2d 71 (6th Cir. 1962).

1. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Whippler v. Balkcom, 342 F.2d 388 (5th Cir. 1965). We note in passing that the technical requirements of *Miranda* are inapplicable to trials commenced, as was appellant's, before June 16, 1966. John- son v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). *Escobedo* would appear inapplicable, for the reason that appellant was neither in custody, interrogated, nor coerced. There is no claim of involuntariness.

It is also urged that the court's private examination of Albert Bowie constituted a denial of appellant's right to confront and cross-examine the witness and hence a denial of 14th Amendment due process.[2] Although the right of cross-examination is absolute, it is not unrestricted; the scope of such examination may be limited by the trial judge in the exercise of his discretion.[3] In particular, where the issue is admissibility of evidence, any testimony received is not "against" the defendant. The voir dire examination of a witness is preparatory to receipt of his testimony-in-chief—an aid to the court's discretionary determination[4]—and cross examination need not be allowed.[5] Although the practice here complained of does not receive our unreserved approval, we hold that so long as some opportunity is had to cross-examine the witness' testimony-in-chief, as was had by appellant here, there is no constitutional irregularity.

In accordance with what was then the Texas procedure, the county sheriff was charged with shepherding the sequestered jury during appellant's trial. He was also a witness for the prosecution.[6] Appellant contends that this situation denied him a fair and impartial jury under Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). However, this court has read *Turner* as limited to situations in which the jury custodian's testimony was central to the development of the case for the prosecution and in which his contact with the jury was continual and intimate. See Crawford v. Beto, 385 F.2d 156 (5th Cir. 1967); Bowles v. State of Texas, 366 F.2d 734 (5th Cir. 1966). The record here demonstrates that neither was the sheriff a principal witness[7]

2. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). We find no federal precedent squarely in point. However, there is state court authority which would support appellant's position. State v. Butler, 27 N.J. 560, 143 A.2d 530 (1958) (competency determination based on reports not available to defendant); People v. Tanaglea, 241 App.Div. 823, 271 N.Y.S. 1 (1934) (defendant not permitted to probe competency of complaining witness via cross-examination); Butler v. State, 217 Miss. 40, 63 So.2d 779 (1953) (court relied on evidence heard in another proceeding to which defendant was a stranger). Citing state court decisions, Wharton concludes that "the examination to determine whether [the witness] is competent must be public, not private." 3 Wharton, Criminal Evidence, Sec. 763 (12th ed. 1955). See also 23 C.J.S. Criminal Law § 974 at 891. Contra, State v. Comstock, 137 W.Va. 152, 70 S.E.2d 648 (1952) (private examination in chambers not error). None of these decisions appears based on constitutional requirements.

3. Grant v. United States, 368 F.2d 658 (5th Cir. 1966); Hendrix v. United States, 327 F.2d 971 (5th Cir. 1964); Roberson v. United States, 249 F.2d 737, 72 A.L.R.2d 434 (5th Cir. 1957), cert. denied, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958).

4. The trial judge may base his decision on observations of the demeanor of the witness as well as upon statements he may make. Wheeler v. United States, 159 U.S. 523, 16 S.Ct. 93, 40 L.Ed. 244 (1895); Doran v. United States, 92 U.S. App.D.C. 305, 205 F.2d 717, 719 (1953); Oliver v. United States, 267 F. 544, 547 (4th Cir. 1920). Such observations are clearly not subject to cross-examination.

5. Hendrix v. United States, 327 F.2d 971, 976 (5th Cir. 1964). See Wigmore, Evidence, Sections 487, 1385 (3d ed. 1940). It is accepted procedure for a court to examine the witness without allowing interference by counsel. See Muncie v. Commonwealth, 308 Ky. 155, 213 S.W.2d 1019 (1948); State v. Butler, 32 N.J. 166, 160 A.2d 8 (1960); State v. Wilson, 156 Ohio St. 525, 103 N.E.2d 552, 30 A.L.R.2d 763 (1952); Ball v. State, 188 Tenn. 255, 219 S.W.2d 166 (1949); Studer v. State, 159 Tex.Cr.R. 598, 265 S.W.2d 833 (1954); Ruby v. State, 9 Tex.App. 353 (1880).

6. The now-effective Texas Code of Criminal Procedure, Vernon's Ann., Art. 36.24, prohibits the sheriff from acting as bailiff if he "is to be called as a witness in the case."

7. He testified to "formal matters concerning his investigation of the murder which were not controverted and which were borne out by other testimony."

nor did he have any contact with the jury other than in the courtroom.[8] The mere performance of this dual role as a prosecution witness and official jury custodian did not, in these circumstances, threaten prejudice to appellant or deny him a fair trial under *Turner*. The denial of habeas corpus is

Affirmed.

8. Q. Exactly what type of contacts would you have with the jury?
A. Not any, just in the courtroom. I had my deputies assigned to them, that's the only contact I had.
Q. The only contact you had was on this one occasion when you asked if any of the jurors wanted anything to drink or wanted to go to the restroom?
A. That's the only time I ever talked with them.
Q. And the only other time that you were around the jury was to unlock the door so that they might go up to the jury room?
A. To turn them in and out, as the Court ordered me to.