**Alfred Melvin FELDSTEIN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 22344.**

United States Court of Appeals,
Ninth Circuit.

June 22, 1970.

Rehearing Denied July 27, 1970.

Burton Marks (argued) of Beverly Hills, Cal., for appellant.

Shelby R. Gott (argued) Asst. U. S. Atty., Edwin L. Miller, Jr., U. S. Atty., San Diego, Cal., for appellee.

Before BARNES, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

In a jury trial, Feldstein was found guilty of three different offenses, each arising under 21 U.S.C. § 176a. In count 1 of the indictment, he, Dodds and Ollendorf, were charged with aiding and abetting one Rosciano in smuggling marihuana into the United States from Mexico. In count 2, he and the same two persons were charged with aiding and abetting Rosciano in concealing and facilitating the transportation and concealment of the same quantity of marihuana, which had been imported into the United States contrary to law. In count 3, Feldstein, Rosciano, Dodds and Ollendorf were charged with conspiring to import and bring marihuana into the United States without presenting it for inspection or entering and declaring it, as required by 19 U.S.C. §§ 1459, 1461, 1484 and 1485, and to conceal and facilitate the concealment and transportation of marihuana brought into the United States contrary to law. Feldstein was sentenced to ten years on each count, all three sentences being concurrent, and to a fine of $10,000 on each of counts 1 and 2, a total of $20,000. The assignments of error affect all three counts.

Feldstein was tried alone; the other three named defendants testified for the government. Stated most favorably to the government, the facts, as shown in their testimony, are these: Feldstein and Dodds shared an apartment in Los Angeles in December, 1964 and January, 1965. In December, while Dodds was away, Feldstein paid $1800 to Ollendorf to be used by Ollendorf to buy marihuana in Mexico for Feldstein and Dodds. Dodds did not trust Ollendorf. On about January 1 or 2, 1965, after Dodds had returned and learned what Feldstein had done, these three men met at the Los Angeles apartment. Ollendorf returned $1250 of the money to Feldstein and Dodds. At another meeting, it was agreed that Dodds and Ollendorf would proceed to Mexico on January 6, in Dodds' car, and buy marihuana from a source in Mexico known to Ollendorf. It was also agreed that Rosciano would meet them in Tijuana, Mexico, and would receive the marihuana from them and bring it across the border and back to Feldstein in Los Angeles in a different car, furnished by Feldstein. Feldstein, using a false name, obtained a car from a car-rental agency in Los Angeles, and turned it over to Rosciano. The plan was carried out. Dodds and Ollendorf drove, in Dodds' car, to Mexico, bought the marihuana, and put it in the trunk of that car. Rosciano drove to Mexico in the car furnished by Feldstein. The three men met at the appointed place, in Tijuana, drove out of town to a secluded spot, removed the marihuana from Dodds' car, and concealed it in the rented car. Rosciano, driving that car, proceeded to the border. Dodds and Ollendorf did not accompany him. When Rosciano drove across the border into the United States in the rented car, he was stopped at the United States Customs Station, the car was searched, and the marihuana was found concealed in it.

It is undisputed that Rosciano did smuggle the marihuana into the United States and conceal and transport it after it was brought into the United States. It is also undisputed that Feldstein had obtained the car that Rosciano used, and turned it over to him. If the testimony of Dodds, Ollendorf and Rosciano is believed, it is also clear that Feldstein, Dodds and Ollendorf aided and abetted Rosciano in committing these offenses, and that all four men conspired to commit them. The same evidence, if believed, demonstrates beyond peradventure that Feldstein had the necessary knowledge and intent that the marihuana was to be imported into the United States from Mexico and was to be transported and concealed in this country. On the other hand, if these witnesses' testimony is not believed, the government had no case against Feldstein.

In its instructions, the court told the jury that it must find specific intent on the part of Feldstein, that a necessary element of the offense charged in count 1 was that Feldstein knowingly caused the importation of the marihuana, that a

necessary element of the offense charged in count 2 was that Feldstein knew that the marihuana had been imported into the United States contrary to law, and that as to count 3, a necessary element was that Feldstein knew that the marihuana was to be brought into the United States contrary to law. Furthermore, in defining aiding and abetting, the court told the jury that it must find that Feldstein personally had knowledge of the fact that the marihuana had been illegally imported.

### 1. *The presumption in § 176a.*

If ever there was a case in which the so-called presumption contained in section 176a was not needed by the government to obtain a conviction, this is that case. Nevertheless, for reasons that escape us, government counsel requested, and the court gave elaborate instructions regarding the presumption and defining possession. Feldstein's counsel objected, albeit not too forcefully, his principal ground being that there was no possession by Feldstein.

 In its instructions about the presumption, the court first read to the jury the pertinent language of section 176a. It then proceeded to embroider on that language. It defined constructive possession as knowingly having the power and the intent to exercise dominion and control, either directly or through another person, and stated that if the jury found that Feldstein had constructive possession, that would bring him within the word "possession" as used in the statutory presumption. It then said that the statute makes it unnecessary for the government to offer any evidence in support of the charge as to the defendant's knowledge, if it shows that the defendant was in constructive or actual possession of the marihuana. It continued by saying that if possession was established, it became incumbent upon the defendant to go forward with the evidence and show that he came into possession of the marihuana legally. It further said that to rebut the presumption the defendant must show by satisfactory proof that the possession did not involve a violation of the statute, either because the substance was not imported contrary to law or because he had no knowledge of unlawful importation, and that if possession is shown, the explanation offered must not only be believed by the jury, but must be one that shows that the possession was lawful under the statute. "Such explanation serves no purpose if it shows guilty knowledge by the defendant offering such explanation."

In Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, the Supreme Court struck down the section 176a presumption insofar as it relates to the knowledge of the defendant that the marihuana was illegally imported. In United States v. Scott, 9 Cir., 1970, 425 F.2d 55, we held that this aspect of the *Leary* decision is fully retroactive. Under these circumstances, Feldstein's conviction must be reversed and a new trial ordered, unless we can say, beyond a reasonable doubt, that the giving of the instructions as to the presumption was harmless. Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. As we have previously indicated, the government quite unnecessarily risked a reversal by asking for instructions based upon the presumption in a case in which its own evidence directly shows the necessary knowledge and intent. Not only that, but the instructions proposed and given go beyond the presumption as written in the statute, and, if the presumption were valid, might still amount to prejudicial error. See, *e. g.*, United States v. Christion, 9 Cir. 1970, 426 F.2d 787; Chavez v. United States, 9 Cir., 1965, 343 F.2d 85, 89; United States v. Llanes, 2 Cir., 1967, 374 F.2d 712, 715–716. However, Feldstein's counsel did not specifically object to these instructions as misstating the law as it was embodied in section 176a. His objection was general and based on his contention that Feldstein did not have possession at all.

Strange, to say, government counsel, in arguing to the jury, did not urge that the government's evidence directly showed the required knowledge and intent on the part of Feldstein. As to this element of the case, he relied entirely upon the presumption and upon the court's definition of constructive possession. The major part of his argument was a summarization of the testimony of the government's witnesses and an argument as to why the jury should believe them. Similarly, defense counsel did not argue that if the witnesses were believed the government still had not proved either the necessary knowledge and intent or constructive possession, or that possession had been explained. He devoted himself to an attack on the credibility of the government's witnesses. As the case was presented to the jury by counsel, the real issue was the credibility of the government's witnesses, not the legal consequences of their testimony if it was believed.

In spite of the emphasis unnecessarily placed upon the presumption, we are convinced that the giving of these instructions, and counsel's argument were, in this particular case, harmless beyond a reasonable doubt. The only basis upon which the jury could have convicted was by believing the testimony of the three government witnesses as to the agreement that was reached at Feldstein's apartment, and as to what was done to carry it out. The jury could not have found possession if it did not believe the testimony showing that Feldstein supplied the money and the car, pursuant to the plan, and for the purpose of carrying it out, and thus, although he never left Los Angeles, was in sufficient control of the maneuvering of the three other conspirators, and particularly of Rosciano, to have constructive possession. This same evidence, if believed, as it must have been for the jury to convict, also shows knowledge and intent on Feldstein's part that the marihuana would be acquired in Mexico, would be smuggled into the United States, and would then be concealed and transported in the Unit-ed States. Thus the jury's finding of possession is necessarily based upon the identical testimony which unequivocally shows the requisite knowledge and intent, and so indicates to us that the result would have been exactly the same had the presumption instructions not been given or discussed, and that the error was harmless beyond a reasonable doubt.

2. *Other claimed errors.*

a. *Aiding and abetting an unconvicted principal; conspiring with unconvicted co-conspirators.*

Feldstein argues that he should not have been convicted of aiding and abetting where the alleged principal, Rosciano, was never tried. This is not the law. All that the prosecution need prove is that the offense has been committed. It is not even necessary that the identity of the principal be established, much less that he be convicted. See United States v. Provenzano, 3 Cir., 1964, 334 F.2d 678, 691; Hendrix v. United States, 5 Cir., 1964, 327 F.2d 971, 975, and the many cases there cited. Similarly, in the conspiracy charge, one can be convicted even though the indictment against all the other conspirators has been dismissed. Such conspirators need not even be charged. Ng Pui Yu v. United States, 9 Cir., 1965, 352 F.2d 626, 633.

b. *Statements to undercover agent.*

Feldstein objects to the admission of the testimony of Bachrach, a government agent who talked to him while posing as a marihuana buyer. This was after Rosciano's arrest, but before Feldstein had been either charged or arrested. There was substantial evidence that the investigation had not even focussed on Feldstein when Bachrach talked to him. Although the conversation took place on January 28, 1965, three weeks after Rosciano was caught at the border, Bachrach testified that he knew nothing of that arrest, and had approached Feldstein for other reasons. The purpose of the meeting was to arrange a purchase of marihuana.

It is asserted that Bachrach should have warned Feldstein before talking to him. Reliance is on Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The trial began in May of 1966, so that *Miranda* would not apply even if Feldstein had been in custody. Nor does Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 apply; Feldstein was not in custody.

One cannot be an effective undercover agent if he must give warnings which inevitably disclose his identity. As we have several times held, a defendant is not entitled to an attorney while committing or arranging to commit a crime. Nor is he, in those circumstances, entitled to warnings. See Garrett v. United States, 9 Cir., 1967, 382 F.2d 768, 772; Battaglia v. United States, 9 Cir., 1965, 349 F.2d 556, 559; Grier v. United States, 9 Cir., 1965, 345 F.2d 523, 524. *Cf.* Lewis v. United States, 1966, 385 U.S. 206, 210, 87 S.Ct. 424, 17 L.Ed.2d 312; Hoffa v. United States, 1966, 385 U.S. 293, 303, 87 S.Ct. 408, 17 L.Ed.2d 374.

No other point raised merits discussion.

Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. The majority holds that an error of constitutional dimension was, under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), harmless beyond a reasonable doubt. It does this while, at the same time, forthrightly observing that the prosecution's appeal for conviction, in summation, was predicated, almost wholly, upon the proposition that the jury should apply the unconstitutional presumption. Feldstein never had actual possession of the marihuana, and I cannot believe that he was not prejudicially affected by the erroneous instruction and the prosecution's argument thereof. We learned, in Wilson v. Anderson, 379 F.2d 330 (9th Cir. 1967), rev'd sub nom. Anderson v. Nelson, 390 U.S. 523, 88 S. Ct. 1133, 20 L.Ed.2d 81 (1968), that it

is a rare case indeed when error of constitutional magnitude can be held, beyond reasonable doubt, not to have prejudicially affected the rights of an accused.

Moreover, my examination of the instructions given to the jury in this case leads me to believe that the majority's conclusion cannot be reconciled with our court's recent opinion in United States v. Christion, 426 F.2d 787 (9th Cir. May 14, 1970). *See also* United States v. Mahoney, 427 F.2d 658 (9th Cir. May 12, 1970).

I would reverse.