434 F.2d 1288
 UNITED STATES of America, Plaintiff-Appellee,
v.
Louis SCORATOW, a/k/a Lou Simon a/k/a Lou Schall, Defendant-Appellant.
 No. 29895 Summary Calendar.*
*(1) Rule 18, 5th Cir.; See Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5th Cir., 1970,
 
 431 F.2d 409, PartI.
 United States Court of Appeals, Fifth Circuit.
 Nov. 19, 1970, Certiorari Denied March 8, 1971, See 91 S.Ct.
976.
 Max B. Kogen, Miami, Fla., for defendant-appellant.
 Robert W. Rust, U.S. Atty., J. V. Eskenazi, Asst. U.S. Atty., Miami, Fla., for plaintiff-appelle.
 Before THORNBERRY, MORGAN and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 The defendant in the instant appeal, Louis Scoratow, a/k/a Lou Simon, a/k/a Lou Schall, was indicted together with J. T. Watters, a/k/a Jack Watters, a/k/a John Paul Wymard, a/k/a J. T. Jenkins; and Sheldon Louis Polakoff, a/k/a Shelby Pollack, a/k/a Irwin Panzer, in a four-count indictment for violating 18 U.S.C.A. 2314 (1970) by devising a scheme to defraud Lillian Nadler and inducing her to travel in interstate commerce in the execution of that scheme.[1] In Counts I and II the indictment charged that Scoratow aided and assisted Watters and Polakoff in this scheme in violation of 18 U.S.C.A. 2.[2] A severance for trial was granted to Scoratow when counsel for Watters advised the court that Watters would call Scoratow's then counsel as a witness in his behalf. After a trial to a jury Scoratow was found guilty under Counts I and II.
 
 
 2
 The facts, stated most favorably to the government on this review,[3] disclose that Scoratow and Watters first met Mrs. Nadler, a wealthy widow and a native of New York, New York, on an airplane trip to Miami, Florida. Having learned the name of Mrs. Nadler's hotel destination during the encounter on the plane, Scoratow casually approached her in her hotel lobby several days later and reintroduced Watters. This apparently happenstance introduction led Mrs. Nadler first to dinner that evening with Watters, then to other dates which developed into a sexually intimate relationship before Mrs. Nadler returned to New York. Several weeks later, as a result of a telephone call from Watters, Mrs. Nadler traveled from New York to Fayetteville, North Carolina to spend a weekend with her suitor. On Saturday during this visit, Watters took Mrs. Nadler to the offices of a Fayetteville construction company whose regular work force was off-duty for the weekend. Scoratow was present there, seated behind a desk and Watters explained to Mrs. Nadler that Scoratow was his partner in this construction business. This was a hoax. The real owner of the business had allowed these men, who worked as commissioned salesmen, to use the office that particular Saturday to make sales calls. Later that day Scoratow rushed into the motel room where Watters and Mrs. Nadler were staying to advise Watters in Mrs. Nadler's presence that an emergency had arisen in the construction business that required them to immediately raise 8,900 dollars to discharge liens on a project, failing in which they would lose a 40,000 dollar investment. This too was shown to be a fabrication. After Mrs. Nadler offered to loan the money to Watters she traveled with him to New York City where she withdrew sufficient funds from savings accounts in banks there and delivered them to him in time for him to meet the supposed 'deadline'. Approximately one month later Watters and Scoratow traveled to New York City where Watters spent several days lavishing his attentions on Mrs. Nadler. In the midst of this episode another 'emergency' developed involving an alleged Central American business deal between Watters and Scoratow, this time necessitating a 25,000 dollar advance to save the day. Mrs. Nadler agreed to secure these funds from the sale of stock and turn them over to Watters, which she did. Approximately another month later, Mrs. Nadler was induced to move to Florida because Watters wanted them to be together, but he was becoming very involved with a business organized by Watters, Scoratow and Polakoff. The business corporation which these men formed was a mere shell without any real business or fiscal substance. After Mrs. Nadler moved to Florida, Watters requested that she accompany him on two 'buying trips' to New York for the new corporation. While in New York Watters and Polakoff relieved Mrs. Nadler of approximately 50,000 dollars. On more than one occasion during the 'courtship' period, both Scoratow and his wife advised Mrs. Nadler that Watters preferred the company of mature women and reassured her that Watters was truly in love with her. Of the sums taken from Mrs. Nadler, Scoratow received in excess of 31,000 dollars.
 
 
 3
 Scoratow advances two contentions on this appeal. First, since Mrs. Nadler did not part with any money except in New York, that interstate commerce was not involved, hence no violation of 2314 was shown; second, since Scoratow was not shown to have committed any overt act which induced Mrs. Nadler to travel in interstate commerce, he could not be guilty of aiding or abetting the commission of that essential act, hence he was improperly convicted.
 
 
 4
 As to his first point, Scoratow asserts that because the actual transfers of control of funds always occurred after Mrs. Nadler was in New York, the crime, if any, was local in character. He says that the fact that the victim had previously traveled in interstate commerce was incidental, since the fraud did not occur until such travel had ended. To support this contention, Scoratow relies on Loman v. United States, 243 F.2d 327 (8th Cir. 1957), which involved a prosecution under the first paragraph of 2314.[4] In that case Loman and another persuaded their victim to withdraw money from his bank in another state and accompany them to a second state where the money was delivered, ostensibly to enable the con men to suppress an unpleasant criminal proceeding. That court held Loman could not be guilty of transporting goods which he knew had been stolen or taken by fraud because the money was still in the victim's possession until the interstate transportation had been completed. The reason that case is not applicable to the case at bar is that the first paragraph of 2314, upon which Loman is based, defines a crime requiring that the funds fraudulently obtained be transported in interstate commerce. The second paragraph of 2314, which is involved here, is a distinctly different crime from that for which Loman was tried. We agree with the interpretation placed on this second paragraph in United States v. Hassel, 341 F.2d 427 (4th Cir. 1965).
 
 
 5
 'The second paragraph (of 2314), with which we are concerned, was inserted by Congress in 1965. It was directed at confidence games and swindles which reach into interstate commerce, i.e. 'interstate transportation of persons in the perpetration of confidence games'. See U.S.Code, Congressional and Administrative News, 84th Congress, Second Session, 1956, Vol. 2, Pages 3036, 3037. To adopt Hassel's construction that the victim must be induced to (1) travel interstate and (2) bring with him $5,000 would violate the intention of Congress, as the language of the statute and its legislative history clearly support the contrary construction, namely that the government must show a devising of a scheme intending a swindle of $5,000 or more, and that as a result of that scheme a victim was induced to travel in interstate commerce.'
 
 
 6
 The jury in the case at bar was also fully warranted in inferring from the evidence presented that Scoratow, Watters and Polakoff deliberately engaged in a common scheme to beguile and befool Mrs. Nadler through the pretense and representation that Watters was in love with her and that Mrs. Nadler was induced to travel between North Carolina, Florida and New York to carry out a scheme to acquire her funds. This cabal did not involve a single instance of travel between states but rather repeated interstate travel to the site of her lover and returns to the place where her funds were located. Such conduct is explicitly proscribed by the second paragraph of 2314.
 
 
 7
 As authority for his second contention, that the proof failed to show he aided or abetted the interstate commerce aspects of the action, Scoratow principally relies upon United States v. Crimmins, 123 F.2d 271 (2nd Cir. 1941). In Crimmins ten persons were indicted for engaging in the joint enterprise of disposing of stolen bonds. Nine of them were physically located in New York. The tenth, Crimmins, was a lawyer practicing in Syracuse. His only contact with the other nine was through one of the conspirators who several times traveled from New York to Syracuse and made sales of bonds to Crimmins under such circumstances as would have justified the jury in concluding that Crimmins must have known the bonds were stolen. However, since the indictment was for conspiracy to transport stolen property in interstate commerce, the court held that one in Crimmins circumstances who was only peripherally involved, could not be assumed to have known that the stolen bonds had been transported in interstate commerce. The same circuit in United States v. Corallo, 413 F.2d 1306 (2nd Cir. 1968) distinguished Crimmins from a case such as was there before the court, and such as we have here before us,
 
 
 8
 'where the totality of the proofs, including testimony of declarations and acts of co-conspirators in furtherance of the illegal scheme, reveal the appellant as one who was right in the thick of things as a central member, manipulating and closely supervising the carrying out of the principal object of the conspiracy.'
 
 
 9
 Since Watters was to be the paramour, it is difficult to imagine how Scoratow could have played a more central and principal part in achieving the object of the fraudulent scheme. Most surely he was a central member of the company. Therefore, it was not necessary for the government to prove that he personally induced Mrs. Nadler to travel in interstate commerce. The evidence was amply sufficient to justify his conviction as an aider and abettor. See Hendrix v. United States, 327 F.2d 971 (5th Cir. 1964).
 
 
 10
 The conviction of Louis Scoratow is affirmed.
 
 
 
 [1]
 The pertinent provisions of 18 U.S.C.A. 2314 (1970) involved in this action are at the second paragraph, which reads as follows:
 'Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more; 'Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.'
 
 
 [2]
 18 U.S.C.A. 2(a) (1969) provides:
 'Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.'
 
 
 [3]
 See Part I of Kroll v. United States, 433 F.2d 1282 (5th Cir. 1970) (Nov. 2, 1970)
 
 
 [4]
 The first paragraph of 2314 provides:
 'Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; 'Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.'